504 A.2d 1163

**Morton FRANK and Edith C. Rollins, Substitute Trustees,**

v.

**Lawrence H. STORER, et al.**

**No. 778, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Feb. 18, 1986.

Certiorari Granted May 23, 1986.

Daniel W. Coon (Timothy R. Dingilian and Jackson & Campbell, P.C., of counsel on brief), Rockville, for appellants.

Ellia J. Koch (O'Malley, Miles, McCarthy & Harrell on brief), Upper Marlboro, for appellees.

Argued before BISHOP, GARRITY and ADKINS, JJ.

BISHOP, Judge.

Appellants Morton Frank and Edith Rollins, Trustees under a Deed of Trust, appeal from an order of the Circuit Court for Prince George's County granting a Motion to Dismiss a foreclosure proceeding filed by them against the property of appellee Robert G. Glenn, who had purchased

the subject property from Lawrence and Dottie Storer, mortgagors in the Deed of Trust.

Appellants raise three issues:

I. Did the trial court err both procedurally and as a matter of law in holding that it lacked subject matter jurisdiction over the foreclosure proceedings?

II. Is a purchaser of property which is the subject of a modification agreement recorded in the land records of Prince George's County, but never indexed, charged with notice?

III. Are the provisions of Section 3–104(f), Maryland Real Property Code Annotated, applicable to Modification Agreements pertaining to recorded Deeds of Trust?

## FACTS

The following facts are stipulated:

In July, 1980 Hy Wayne and Marie Wayne ("Waynes"), the holders of a promissory note secured by the Deed of Trust at issue on appeal, sold their home in Maryland to Lawrence and Dottie Storer ("Storers") for $85,000.[1] The Waynes received a cash downpayment from the Storers in the amount of $42,500. The Storers also executed a note for an additional $42,500, payable to PN Investments, which was subsequently assigned by PN Investments to the Waynes. The Note was secured by a duly recorded blanket Deed of Trust, dated July 11, 1980, covering three pieces of Storer real property. Appellants Morton Frank and Edith Rollins were trustees under the Deed of Trust.

On December 30, 1980, the Storers, the Trustees, and the Waynes entered into a Modification Agreement which shifted the security interest of the recorded Deed of Trust from a lot in Montgomery County to another piece

---

1. The Storers were named in the action below solely because of the requirement of Rule W74 that they, as mortgagors, be given notice of the pending foreclosure proceedings. The Storers no longer have any interest in the real property at issue and they did not appear below.

of Storer real property located in Prince George's County (hereinafter referred to as the "Waterford" property). Such a substitution of collateral was authorized by the express provisions of the Deed of Trust. It is the Waterford property [subsequently purchased by appellant] that was the subject of the foreclosure proceedings below.

The Modification Agreement was recorded among the land records of Prince George's County on January 28, 1981 at liber 5366 and folio 172. However, it appears that prior to its recordation, the Clerk of the Court determined it to be deficient in form in that it did not contain a reference to the liber and folio number of the original Deed of Trust; consequently, the Clerk "red tagged" the Modification Agreement, recorded it and—without indexing it—allegedly returned it to the Storers' counsel for correction and re-recording.

> The "red tag" on this instrument provided as follows: This Release has not been indexed because it contains no reference to the liber and folio where the Deed of Trust or Mortgage is recorded, or because there is no Deed of Trust or Mortgage at the cited reference. Please attend to this matter immediately.

The Modification Agreement was never re-recorded, nor was any reference to it placed in the index maintained by the Clerk. On August 8, 1981, the Storers sold the Waterford property to appellee Robert G. Glenn. The existence of the Modification Agreement, and the Waynes' lien of record, allegedly was not discovered at the time of this transfer.

On February 4, 1985, appellants filed an order to docket foreclosure proceedings on the Storer Deed of Trust, as modified, and the action was subsequently placed on the docket by the Clerk of the Court. On April 8, 1985, appellee moved to dismiss the proceedings for lack of subject matter jurisdiction. On June 7, 1985, a hearing on appellees' motion was held before the Honorable James Magruder Rea. Following the hearing, Judge Rea

issued an Opinion dismissing appellants' foreclosure proceedings.

## I.

### *Subject Matter Jurisdiction*

All parties refer to lack of subject matter jurisdiction as the basis for the trial court's disposition of this case. Although appellee's Motion to Dismiss was based on that ground, the circuit court did have subject matter jurisdiction and did not hold to the contrary. The circuit court dismissed the foreclosure proceeding "as to certain property," appellee Glenn's Waterford property, because it found no disputed facts and that Maryland law and the equities of the case favored appellee Glenn.

Appellants filed a written response to appellee's Motion to Dismiss, argued at the hearing on the Motion the issues raised in that Motion, and at no time raised objection to that procedure. The issue is not preserved for our review. Rule 1085. In addition, the decision of the circuit court was not based on a lack of subject matter jurisdiction; therefore, appellants' argument that the trial court erred as a matter of law in so holding is not relevant. Appellants expressed no surprise at the issues presented at the hearing, and neither objected to the proceedings nor asked for a postponement in order to produce other evidence. We will discuss, to the extent necessary for this opinion, how we view the procedure before the trial court in this case.

Appellee Glenn's argument before the trial judge was that the court docketed foreclosure proceedings on a Deed of Trust which was not secured by his property, and, therefore, foreclosure proceedings on his unmortgaged property should have been dismissed. Had appellee proceeded under the W Rules to enjoin the imminent sale of his property he would have had to meet the following conditions precedent set out in Rule W76 b 2:

Such an injunction shall not be granted unless the following conditions are met:

(1) The petition alleges under oath whether petitioner admits any amount to be due and payable under the mortgage as of the date the petition is filed, and if so the petitioner has paid such amount into court with the filing of the petition, and

(2) The petition alleges under oath facts, which shall be set forth in detail, showing that—

(i) the mortgage debt and all interest due thereon have been fully paid, or

(ii) there is no default in the mortgage, or

(iii) some fraud was used by the mortgagee, or with his knowledge, in obtaining the mortgage.

Clearly the conditions precedent to the granting of an injunction in Rule W 76 b 2, which is the only method in the W Rules to prevent a foreclosure sale before the sale has actually taken place, presume the existence of a valid mortgage on the subject property, something appellee claims does not exist. This rule, as do the other Chapter W Rules, assumes that the property to be sold is indeed the mortgaged property and thus does not provide for the existing situation. Appellee, given his unique factual position, informed the court of the alleged error by means of a Motion to Dismiss, a procedural device which appellants failed to challenge. Appellants did not object to proceeding on the Motion to Dismiss. We hold that Motion to be functionally equivalent to a petition for injunctive relief. We do not find any prejudice to the rights of appellants.

## II.

### Notice

In argument before the circuit court appellants' attorney stated that

"... This is one of those classic cases where title insurance should protect a buyer who buys—it's my belief and to my knowledge Mr. Koch's client (appellee) is, in fact, a third-party *bona fide* purchaser for a consideration. That's why we buy title insurance when we buy

real estate, to avoid against unrecorded or missindexed (sic) or unindexed other liens against the property."

Appellants now argue before us, as they also argued before the circuit court, that "... appellee is not a *bona fide* purchaser of the property ..." because he had constructive notice of appellants' recorded Modification Agreement. Appellants contend that appellee is charged with this notice regardless of a missing or erroneous index entry.

In support of this argument, appellants cite *Standard Finance Co. v. Little,* 159 Md. 621, 152 A. 264 (1930) for the proposition that indexing is separable and distinct from recording and that failure of the clerk "to index does not affect the validity or enforceability of the recorded instrument." In *Standard,* the Court affirmed the trial court's sustaining of a demurrer to the mortgagee's declaration filed against the court clerk for damages which allegedly resulted from the failure of the clerk to index the mortgage. Judge Bond for the Court explained the case this way:

> The appellant contends that the indexing of conveyances is a part of the recording which is required to pass title, and that without an indexing of the particular instrument the recording was not complete, the mortgage lien was not preserved as against a subsequent vendee without actual notice of it, and there having been a conveyance to such a vendee the appellant was deprived of his security by the omission of the clerk.

159 Md. at 622, 152 A. 264.

That in *Standard* the Court held "[t]he lien would be secured and continue unaffected by the omission from the index, and that the declaration does not therefore show the possibility of loss assumed," *Id.,* does not mean that the lien holder would have been successful in actual litigation of that issue. The declaration filed in the Court of Common Pleas of Baltimore City by the plaintiff-mortgagee (appellant) indicates no foreclosure proceedings were filed and no litigation was filed by the mortgagee against the bona fide purchaser for value without notice. The basic allega-

tion was that because the clerk failed to index the mortgage, Standard, the mortgagee, lost its security and therefore demanded damages from the clerk. Standard was decided within the very narrow question of the liability of the clerk for his failure to index. Based on the foregoing we hold that *Standard* is not controlling on the issue in the case *sub judice*.

 *Standard* may be further distinguished in that there is no indication at all in *Standard* that the mortgagee knew that the mortgage had not been indexed. It has been held that failure to index did not affect constructive notice where the failure was not the fault of the mortgagee. *Scott v. Thomas*, 211 Ala. 420, 100 So. 778 (1924). Although in the case before us, the stipulated facts refer to the return of the "red-tagged" Modification Agreement to the "Storers'" attorney, we find in the transcript of the argument that appellant's counsel stated:

"... my client may have been out if the *title attorney* did not resubmit it in compliance with the Clerk's request. But that information did not do it, he did not send it back to the Clerk's office, to have it re-recorded and indexed but, in fact, the Clerk's office recorded it and that becomes a significant distinction." (Emphasis added).

From this we conclude that the "red tagged" document was returned to the attorney who handled the settlement and that then it became his obligation to act. From the record before us and from appellants' confirmation of the foregoing at oral argument, we infer that appellants, through the settlement attorney, were on notice that the Modification Agreement had been "red-tagged" and from that point on they were responsible for returning the Modification Agreement containing the necessary references to the clerk. We agree with the reasoning of the trial judge:

In *Standard Finance Co. v. Stephen L. Little,* 159 Md. 621 [152 A. 264] (1930), our Court of Appeals held that a failure to index does not affect the validity of a deed or other instrument that is otherwise properly recorded.

The Court feels that the *Standard Finance* case, although applicable, is not controlling based upon the facts of the matter before the Court. It is undisputed that the grantee in this case was on notice that reference to the "modification agreement" was not being placed in the index to the Land Records. Faced with such knowledge, it was incumbent that the Grantee correct the deficiency in the instrument and return it to the Land Records Division so that it could be properly re-recorded and indexed accordingly. To hold otherwise would be to place an unreasonable burden upon the Defendants, and other would-be purchasers of real estate, to search the voluminous records of land transactions without any reference whatsoever. The object and purpose of the recording act is to put interested parties on notice. To allow a party to record an instrument with knowledge that it will not be indexed would be to flaunt the purpose of the act and render its provisions a nullity.

The trial court's conclusion is supported by *Plaza Corporation v. Alban Tractor Company, Inc.,* 219 Md. 570, 151 A.2d 170 (1959). Preliminarily we point out that on the indexing issue *Plaza* may be distinguished from the case *sub judice* because Section 26 of Title 2 of the Baltimore County Code (Everstine, 1955) made indexing an essential part of the recordation in the chattel records; however, that case also spoke in *dicta* to the distribution of risk based on the position and responsibility of the parties. The *Plaza* Court observed:

Who must suffer for the clerk's mistake? There is a division of opinion in this country as to the correct answer to this question. Some cases hold that the grantee controls the instrument; he can record it or not as he pleases; he, alone, has the right and the opportunity to see that it is properly recorded by the registration officer; hence, if he fails to give the notice required by law, he must bear the consequences, and third persons need not go beyond the records to ascertain the title of the property involved. Other cases, under certain statutes and

construction of statutes, which make instruments operative as records from the time they are filed for record, hold to the contrary, and state that any error occurring after the instrument is filed for record is chargeable to third persons. 8 Thompson, *Real Property*, (Permanent Ed.), secs. 4371, 4372 and 4373; 4 *American Law of Property*, sec. 17.31; 5 Tiffany, *Real Property*, (3rd Ed.), sec.

Tiffany, *op. cit.*, and the *American Law of Property* place Maryland in the first category with the case of *Brydon v. Campbell*, 40 Md. 331. There, a deed conveyed a *four-tenths* portion of a tract of land. By mistake, the clerk transcribed it upon the register as a *fourteenth* part thereof. This Court held that a third party was only chargeable with constructive notice of what the record disclosed.

219 Md. at 584, 151 A.2d 170. We hold that where, as here, the grantee has control of the lien instrument and has knowledge that the instrument is defective for the purpose of indexing, he must act in order to correct the defect so that the instrument may be indexed properly. If he fails to do so, he cannot claim constructive notice to persons without actual notice. To permit him to do so would place an unreasonable burden on the public generally. For us to hold otherwise could lead to gross unfairness to purchasers of property and be the basis for great mischief by unscrupulous persons. All that an unscrupulous mortgagee or lien holder would have to do is submit a defective instrument for recordation, have the clerk record it but not index it because of the defect and then have the property sold to an unsuspecting buyer, and then foreclose on the unindexed mortgage leaving the innocent purchaser in the position of either losing his property or paying off the unindexed mortgage.

We hasten to add that our holding here is not inconsistent with the holdings in *Standard* and *Plaza*. Where the creditor under the lien instrument does not have control of the instrument and is not on notice that it has not been

properly indexed, there would be constructive notice. Our holding in this case does not change that principle of Maryland law.

## III.

### *Md. Real Prop.Code Ann. § 3–104(f)*

In the alternative, appellee argued in the trial court that even if the Modification Agreement were validly recorded, he still could not be charged with notice of its existence because it failed to comply with the statutory prerequisites to recording set out in Md. Real Prop.Code Ann. § 3–104(f) (1981 Repl.Vol., 1985 Cum.Supp.). Appellant responded to this argument by claiming that § 3–104 is inapplicable to Modification Agreements and even if it does apply, it is irrelevant once the instrument has been accepted by the clerk and recorded.

The prerequisites to recording are contained in Md. Real Prop.Code Ann. § 3–104 which, in pertinent part, provides:

(f) *Local and special requirements.*—(1) No fee-simple deed, mortgage, or deed of trust may be recorded in Montgomery County, Prince George's County, or Washington County unless it bears a certification that the instrument has been prepared by an attorney admitted to practice before the Court of Appeals, under his supervision, or by or on behalf of one of the parties named in the instrument.

(2) Every deed recorded in Prince George's County shall contain a reference to the election district in which the property described in the deed is located.

It is conceded that appellants' Modification Agreement did not meet the above requirements.

■ It is patently clear to us that appellants' Modification Agreement is subject to the prerequisites set out above. The effect of this instrument is to *release* one property from the Storers' original Deed of Trust and *encumber* or *mortgage* another; that is its dual effect. The real issue here is the intended effect of the document and what it did.

"Equity is concerned with substance and not with form." *Peninsula Methodist Homes and Hospitals, Inc. v. Cropper,* 256 Md. 728, 735, 261 A.2d 787 (1970).

We decline to reach the issue of whether the foregoing prerequisites are irrelevant once an instrument has been accepted by the clerk and recorded because that issue was not decided by the trial court, Rule 1085, and it is unnecessary in light of our resolution of the notice issue.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY APPELLANTS.