517 A.2d 1098

Morton FRANK and Edith C. Rollins, Trustees

v.

Lawrence H. STORER et al.

No. 38, Sept. Term, 1986.

Court of Appeals of Maryland.

Dec. 1, 1986.

Daniel Webster Coon (Timothy R. Dingilian, on the brief) Rockville, for appellant.

Ellis J. Koch, Upper Marlboro, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals (retired), Specially Assigned.

RODOWSKY, *Judge.*

In *Standard Finance Co. v. Little,* 159 Md. 621, 152 A. 264 (1930), this Court held that a mortgage which had been copied into the land records but which had not been indexed in the general index was a recorded instrument under the Maryland recordation statutes. This case presents the same problem. Because there has been no substantial change in the recordation statutes following *Standard,* we shall hold that the unindexed instrument involved in this case is recorded and shall determine the priorities of the parties accordingly.

The contest here is between trustees for the holders of a note secured by a deed of trust upon, and the debtor's grantee of, property which was substituted as security under the deed of trust by an unindexed modification agreement. In July 1980 Hy Wayne and Marie Wayne (the Waynes) became the holders of a promissory note in the original principal amount of $42,500 made by Lawrence E. Storer and Dottie L. Storer (the Storers) which was secured by a deed of trust to the petitioners, Morton Frank and Edith C. Rollins, trustees. The deed of trust conveyed two lots in Montgomery County and a third lot located in a subdivision known as Fletcher's Addition to Takoma Park in Prince George's County. On December 30, 1980, the Storers, the trustees, and the Waynes entered into an agreement (the Modification Agreement) modifying the deed of trust and agreeing "to allow the security interest in" one of the Montgomery County lots "to be transferred to certain property in Prince George's County, Maryland, known as" the Waterford Lot. The Modification Agreement was copied into the land records of Prince George's County on January 28, 1981, but was not indexed, as hereinafter explained.

The Storers conveyed the Waterford Lot to the respondent, Robert G. Glenn (Glenn), on August 18, 1981. A statement of facts stipulated to by petitioners and respondent recites that "[t]he existence of the Modification Agree-

ment, and the Waynes' lien of record, allegedly [were] not discovered at the time of this transfer."

The trustees docketed foreclosure proceedings against the Waterford Lot on February 4, 1985, in the Circuit Court for Prince George's County. Glenn moved to dismiss the proceedings on the theory that the deed of trust did not cover the Waterford Lot because the Modification Agreement was not validly recorded. He assigned three reasons. First, the Modification Agreement had been "determined to be deficient by the Clerk of the Court," had been returned, and "was not indexed amongst the land records." Second, it had not been certified in accordance with Md.Code (1974, 1981 Repl.Vol., 1986 Cum.Supp.), § 3–104(f)(1) of the Real Property Article (RP) which in relevant part reads:

> No fee-simple deed, mortgage, or deed of trust may be recorded in ... Prince George's County ... unless it bears a certification that the instrument has been prepared by an attorney admitted to practice before the Court of Appeals, under his supervision, or by or on behalf of one of the parties named in the instrument.

Third, Glenn urged lack of compliance with RP § 3–104(f)(2) which reads:

> Every deed recorded in Prince George's County shall contain a reference to the election district in which the property described in the deed is located.

At the hearing on the motion Glenn called as a witness the Assistant Chief Deputy of the Land Records Division of the Office of the Clerk of the Circuit Court for Prince George's County. The witness brought with her a copy of the Modification Agreement made from the land records. That copy was introduced in evidence. It appears that the method of copying documents into the Prince George's County land records is by microfilming them and the exhibit was a print from that film. The copy reflects that, before photographing, each of the three pages of the Modification Agreement was stamped at the top with a liber number, 5366, and a folio number, respectively 172 through 174.

The first page was also stamped to indicate the time of receipt to be 1:30 p.m. on January 28, 1981. To the left of the center of the first page on the print is a black area, two and one-half inches square, which the witness identified as the film impression of a "red tag" which had been placed on the original. A red tag reads:

> This release has not been indexed because it contains no reference to the liber and folio where the deed of trust or mortgage is recorded, or because there is no deed of trust or mortgage at the cited reference.

The witness said that the original of the Modification Agreement, when submitted for recording, would have been handled by a "release clerk." She explained that the original was red tagged because it did not contain a recording reference to the original deed of trust. The Modification Agreement, at the very end of the document, also contained the following

Please mail to:

> Bell Cornelius & Shore
> 108 South Washington Street
> Rockville, Maryland 20850.

The witness concluded that the original Modification Agreement, with the red tag, would have been returned to the above firm.

The balance of the hearing on the motion consisted of argument of counsel. The role of Bell, Cornelius & Shore in the transaction leading to the Modification Agreement was not developed by direct evidence or express stipulation. Counsel for the trustees stood foursquare on the holding in *Standard, supra.*

The circuit court granted the motion and dismissed the foreclosure proceeding. In a written opinion the court stated "that all parties agree and the court finds as a matter of fact that the original 'Modification Agreement,' although recorded in the Land Records and given a liber and folio number, was not indexed and was 'red tagged' and returned to the grantee." (Footnote omitted). The court

further stated that "[i]t is undisputed that the grantee [*i.e.*, the trustees] in this case was on notice that reference to the 'modification agreement' was not being placed in the index to the Land Records." The court then held:

> Faced with such knowledge, it was incumbent that the Grantee correct the deficiency in the instrument and return it to the Land Records Division so that it could be properly re-recorded and indexed accordingly. To hold otherwise would be to place an unreasonable burden upon the Defendants and other would-be purchasers of real estate, to search the voluminous records of land transactions without any reference whatsoever. The object and purpose of the recording act is to put interested persons on notice. To allow a party to record an instrument with knowledge that it will not be indexed would be to flaunt the purposes of the act and render its provisions a nullity.

On appeal by the trustees, the Court of Special Appeals affirmed, essentially for the reasons given by the circuit court. *Frank v. Storer*, 66 Md.App. 459, 504 A.2d 1163 (1986). The intermediate appellate court distilled the rule of law which it was applying as follows:

> We hold that where, as here, the grantee has control of the lien instrument and has knowledge that the instrument is defective for the purpose of indexing, he must act in order to correct the defect so that the instrument may be indexed properly. If he fails to do so, he cannot claim constructive notice to persons without actual notice. To permit him to do so would place an unreasonable burden on the public generally. For us to hold otherwise could lead to gross unfairness to purchasers of property and be the basis for great mischief by unscrupulous persons. [*Id.* at 468, 504 A.2d at 1167.]

In view of this holding the Court of Special Appeals did not opine on the effect of the omissions from the Modification Agreement of a certification by the preparing attorney and of a reference to the election district in which the Waterford Lot is located.

We granted the trustees' petition for certiorari. It questions (I) the basis of decision below; (II) the alternative grounds under § 3–104(f)(1) and (2) advanced by respondent below; and (III) the propriety of moving to dismiss a foreclosure. Respondent did not file any conditional cross-petition and does not argue that the reason given in the red tag for not indexing the Modification Agreement supports the judgments below.[1]

# I

Our analysis begins with the statutes. "Registration systems are purely of statutory origin, and the convenience or inconvenience of searching the records as well as the authority and effect of the registry acts are subjects of the legislative will." *Plaza Corp. v. Alban Tractor Co.*, 219 Md. 570, 582, 151 A.2d 170, 176 (1958). The applicable statutes are codified in the Real Property Article wherein the term "deed" is defined to include "any deed, grant, mortgage, deed of trust, lease, assignment, and release, pertaining to land or property or any interest therein or appurtenant thereto." RP § 1–101(c). Title 3 of that article addresses "Recordation." Within title 3, subtitle 1 presents, "General Rules and Exceptions," subtitle 2, "Priorities Based on Recording," and subtitle 3, provisions relating to "Record Books and Indexes." Title 4 of the Real Property Article deals with the "Requisities of Valid Instruments."

---

1. RP § 3–302(b) does provide that

 [i]n every clerk's office where land records are not recorded in book form, the clerk shall index every ... release or partial releases of a deed of trust, whether in long or short form, in the general alphabetical index, and shall place an entry in the general alphabetical index where the instrument is indexed, on the same horizontal line, indicating the place of record of the original instrument being assigned or released.

 The property for which the Waterford Lot substituted as security and which arguably was partially released from the deed of trust was located in Montgomery County.

In the instant matter the ultimate issue is whether Glenn's title to the Waterford Lot is subject to the deed of trust. The controlling provision is RP § 3–203 which provides:

Every recorded deed or other instrument takes effect from its effective date as against the grantee of any deed executed and delivered subsequent to the effective date, unless the grantee of the subsequent deed has:

(1) Accepted delivery of the deed or other instrument

(i) In good faith,

(ii) Without constructive notice under § 3–202, and

(iii) For a good and valuable consideration, and

(2) Recorded the deed first.[2]

The Modification Agreement is either a "deed or other instrument" within the meaning of § 3–203.[3] Thus the question is whether the Modification Agreement was "recorded."

The verb, "to record," and variations thereof are not specifically defined in the Real Property Article. RP § 3–301(a) in part states that

[i]f the person offering a deed or other instrument affecting property for record first pays the recording fees, the clerk of the circuit court of each county shall record every deed and other instrument affecting property in well-bound books to be named "Land Records," if

---

**2.** Constructive notice under § 3–202 involves possession by the grantee under an unrecorded deed and has no application to the instant matter.

**3.** It is unnecessary here to decide which alternative specifically applies. If the Modification Agreement is viewed as a deed of trust, then the RP § 1–101(c) definition of "deed" would embrace the Modification Agreement. If the Modification Agreement is not a "deed," then it must be an "other instrument." RP § 3–101(a) in part provides that "no estate of inheritance ... or deed may pass or take effect unless the deed granting it is executed and recorded." RP § 3–102 then provides in relevant part:

Any other instrument affecting property ... may be recorded. The recording of any instrument constitutes constructive notice from the date of recording.

that is the practice in the county, or on microfilm, if that is the practice.

RP § 3–302(a) in part provides that "[t]he clerk of the circuit court of each county shall make and maintain a full and complete general alphabetical index of every deed, and other instrument in a well-bound book in his office." The predecessors of these statutes were the basis of decision in *Standard.*

*Standard* was an action against a court clerk for money damages brought by the party which had caused a mortgage to be delivered to the clerk for recording. Judgment was entered in favor of the clerk on demurrer. The lender's declaration alleged that the mortgage had been copied into the land records but that it had not been indexed in the general alphabetical index. The declaration further alleged that the realty encumbered by the mortgage had been conveyed by the mortgagor to a subsequent vendee who had no actual notice of the mortgage with the result that the mortgagee was deprived of its security by the omission of the clerk. We held that "the lien would be secured and continue unaffected by the omission from the index, and that the declaration does not therefore show the possibility of loss assumed." 159 Md. at 622, 152 A. at 265.

This Court contrasted the provisions of Md.Code (1924), Art. 21, §§ 1, 13, 15, and 32, dealing with the execution, acknowledgment, and recordation of deeds and mortgages, with Art. 17, §§ 59, 61, and 62, dealing with alphabetical indexes. The Court, speaking through Chief Judge Bond, concluded that "[t]hroughout these articles in the Code, the recording of an instrument, which effectuates the passing of title, is referred to as a mere transcription before the indexes are made; and it seems to the court that the indexing has not been conceived of as part of that recording." Summarizing the very arguments relied upon by the respondent, and adopted by the courts below, this Court concluded the opinion in *Standard* by saying:

> The argument for including the indexing within the recording, as an essential part of it, is based upon the

importance of the indexing and the danger of losses to persons dealing with property if there may be instruments completely effective to pass title without mention in the indexes. The importance and the danger are obvious. And it is conceivable that a legislature might deem it wise to avoid the danger by including the indexing with the recording as essentials to the complete passing of title. But it seems to this court clear that the General Assembly of this state has not done so, and that the court would be adding to its provisions if it should give the indexing the place in the law contended for by the appellant. [159 Md. at 623–24, 152 A.2d at 265.]

*Standard* clearly placed on the subsequent purchaser the risk of the initial loss resulting from a clerk's failure to index. *Standard* also called upon the General Assembly to shift that risk of initial loss to the party presenting the instrument for record if the General Assembly disagreed with the initial allocation as determined by this Court's interpretation. The statutes dealing with recording and indexing have been amended many times following *Standard*, including the general recodification effected as of January 1, 1973, by Ch. 349 of the Acts of 1972, but the General Assembly has not reallocated the risk.[4] This legislative acquiescence in the interpretation which *Standard* placed on the recording and indexing statutes should not be judicially altered. *See Williams v. State*, 292 Md. 201, 438 A.2d 1301 (1981); *Harbor Island Marina v. Calvert County*, 286 Md. 303, 407 A.2d 738 (1979). Moreover, stability of the law, with consequential predictability of result, is partic-

---

4. For example Code (1924), Art. 17, § 61 which required the clerk to make a general alphabetical index was amended by Ch. 141 of the Acts of 1935, Ch. 151 of the Acts of 1947, Ch. 39 of the Acts of 1954, Ch. 349 of the Acts of 1972, and Ch. 820 of the Acts of 1982. It is now RP § 3–302. Code (1924), Art. 21, § 15, providing that "[n]o deed of real property shall be valid for the purpose of passing title unless acknowledged and recorded as herein directed," was amended by Ch. 349 of the Acts of 1972, Ch. 12 of the Acts of 1974, Ch. 333 of the Acts of 1978, Ch. 480 of the Acts of 1985, and Ch. 5 of the Acts of 1986. It is now RP § 3–101 and RP § 4–101.

ularly desirable in the field of real property law. Knowing where the risk of initial loss lies enables parties to be governed accordingly in their transactions. A party may either knowingly accept the risk, commercially insure against it, or bargain a reallocation or express indemnification.

■ The trial and intermediate appellate courts viewed the instant matter as factually distinguishable from *Standard* and thereby subject to a different rule of law. In this connection we shall assume that Bell, Cornelius & Shore were agents of the trustees and of the Waynes and that knowledge of the red tagging by those agents is attributable to the principals. Nevertheless, we do not agree with the Court of Special Appeals that *Standard*'s holding is limited to situations in which the party presenting the instrument for record had no notice, prior to the subsequent conveyance, of the clerk's failure to index. The declaration demurred to in *Standard* does not reflect when or how the lender learned of the failure to index. More important, *Standard* held that an unindexed instrument is a recorded instrument. The Modification Agreement in this case does not cease to be a recorded instrument, and does not cease to enjoy the priority conferred on an earlier recorded instrument by RP § 3–203, solely because the grantee had actual notice that it was not indexed.[5]

## II

The trustees' certiorari petition raises the other issues which respondent had raised in the Court of Special Appeals but which that court did not reach. Specifically the petitioners submit that the Modification Agreement is effective as a

---

5. R. Powell, *Real Property* § 906, at 82–38 (1984) observes that "[i]n only a few states is the index made a part of the record," and in footnote 19 lists New York, North Carolina, Pennsylvania, Washington, and Wisconsin. For example 49 McKinney's Consolidated Laws of New York, *Real Property Law* § 316 provides in part that "[s]uch indexes shall form a part of the record of each instrument hereafter recorded." Maryland has no comparable provision.

recorded instrument without a certification of preparation by a Maryland attorney and without a reference to the election district in which the property is located as called for by RP § 3–104(f)(1) and (2). Sub-subsection (1) declares that "[n]o ... deed of trust may be recorded ... unless it bears [the certification]," and sub-subsection (2) declares that "[e]very deed ... shall contain [the] reference[.]" We shall assume that the Modification Agreement falls within the ambit of both of those provisions. But neither provision specifies the result of its violation. Nor does either provision address the efficacy of the recording if, despite the absence of the certification or reference, the clerk nevertheless records the instrument.

Glenn draws an analogy to the recordation of an unacknowledged agreement which is by law required to be acknowledged. He cites *Clarke v. Brunk,* 189 Md. 353, 55 A.2d 919 (1947) and *Cockey v. Milne's Lessee,* 16 Md. 200 (1860) for the proposition that no constructive notice is given by copying into the land records an unacknowledged instrument which is required to be acknowledged. While the analogy is helpful, we draw the opposite conclusion from it.

The rule applied in cases like those cited by Glenn caused the General Assembly annually, prior to 1973, to pass curative acts to protect parties from certain formal deficiencies in recorded instruments. *See* Comment to Subtitle 1 of Title 4 of former Art. 21 by the Code Revision Committee of the Section of Real Property, Planning and Zoning Law of the Maryland State Bar Association, 2A Md.Code (1957, 1973 Repl.Vol.), at 225–26. The general revision of the laws relating to real property effected by Ch. 349 of the Acts of 1972 to which those comments were addressed included for the first time a curative provision which operated prospectively. It is now RP § 4–109. It provides:

(a) *Defective grants recorded before January 1, 1973.* —If an instrument was recorded before January 1, 1973, any failure of the instrument to comply with the formal requisites listed in this section has no effect, unless the

defect was challenged in a judicial proceeding commenced by July 1, 1973.

(b) *Defective grants recorded on or after January 1, 1973.*—If an instrument is recorded on or after January 1, 1973, whether or not the instrument is executed on or after that date, any failure to comply with the formal requisites listed in this section has no effect unless it is challenged in a judicial proceeding commenced within six months after it is recorded.

(c) *Failures in formal requisites of an instrument.* —For the purposes of this section, the failures in the formal requisites of an instrument are:

(1) A defective acknowledgement;

(2) A failure to attach any clerk's certificate;

(3) An omission of a notary seal or other seal;

(4) A lack of or improper acknowledgment or affidavit of consideration, agency, or disbursement; or

(5) An omission of an attestation.

 Section 4–109 reflects a public policy which is contrary to the position advanced by Glenn. The defects enumerated in § 4–109 do not affect the validity of the recorded instrument unless the instrument is attacked within a limited time. We recognize that the deficiencies which are automatically cured by § 4–109 do not include the failure to abide by the prerequisites to recording set out in § 3–104(f)(1) and (2) although both of the latter provisions antedated the 1973 adoption of the prospective curative provision.[6] Nevertheless we do not believe that the General Assembly intended a failure to comply with § 3–104(f)(1) and/or (2) to have consequences which were more serious than the consequences of omitting one of the formal requisites enumerated in § 4–109. Rather, sub-subsections (1)

---

**6.** A requirement for certification by a Maryland attorney was first enacted by Ch. 754 of the Acts of 1966 which was applicable only to Montgomery County and the requirement for referring to the election district in Prince George's County in which the property was located was first added by Ch. 668 of the Acts of 1967.

and (2) of § 3–104(f), reflecting the General Assembly's objectives that the certification and reference be included, authorize the clerk to refuse to accept for record an instrument governed by those provisions which does not comply with them. Where, as here, however, the clerk does not enforce the provision but accepts the instrument for record, the validity of the instrument is unaffected and its recordation operates as constructive notice.

### III

The petitioners also assert that the trial and intermediate appellate courts erred in allowing Glenn to raise his contentions by means of a motion to dismiss petitioners' order to docket the foreclosure. The petitioners reason that allowing Glenn to attack the foreclosure by a motion to dismiss circumvented the rules governing injunctions to stay foreclosures, particularly Maryland Rule W76.b.[7]

■ The analysis by the Court of Special Appeals was that the Modification Agreement, due to lack of indexing, failed to subject the Waterford Lot to the lien of the deed of trust and to the power of sale on default vested in the trustees. We have seen in Part I that the unindexed Modification Agreement was, nevertheless, a recorded instrument and it does not, on that score, fail to make the Waterford Lot subject to the power of sale. Inasmuch as the intermediate appellate court's reason for approving use of a motion to dismiss was not well founded, it is not necessary to decide the scope of appropriate use, if any, of a motion to dismiss in a foreclosure proceeding.[7]

---

7. The Court of Special Appeals also based its conclusion that there was no reversible error in Glenn's use of a motion to dismiss on failure by the trustees in the trial court to have preserved the point for appellate review. Glenn, by a cross-petition for certiorari, did not raise this preservation issue as an alternate ground for supporting the judgments below so that the issue is not before us. *See McCray v. State*, 305 Md. 126, 501 A.2d 856 (1985); *Dean v. State*, 291 Md. 198, 434 A.2d 552 (1981).

We do observe, however, that the point sought to be made by Glenn and accepted by the trial and intermediate appellate courts carries strong overtones that the petitioners should be estopped from relying on the recorded Modification Agreement. Only abbreviated testimony was taken at the hearing on the motion to dismiss in this case and that was directed to the legal issue of recordation *vel non.* Glenn is not precluded on remand from introducing additional evidence in an appropriate procedure directed toward demonstrating an estoppel or other ground for relief against the foreclosure.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND TO REMAND THIS CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE RESPONDENT, ROBERT G. GLENN.