Eugene F. **BARTUCCO**, et al., Plaintiffs,

v.

Judy Ann **WRIGHT**, et al., Defendants.

Civ. No. MJG–88–3828.

United States District Court, D. Maryland.

Sept. 17, 1990.

---

noneconomic damages in the wrongful death action.

■ Following the jury verdict, Defendants McLain and Young moved this Court to reduce the jury verdict pursuant to the Maryland statutory cap on nonpecuniary damages. § 11–108.[2] By Memorandum and Order dated August 2, 1990, the Court denied these motions, ruled on other post-trial motions, and entered judgment in favor of the Plaintiffs for the full amount of the jury's verdict. This opinion is issued to state more fully the reasons for the Court's ruling on the motions to reduce the jury verdict.

The "cap" on damages is squarely presented by the case at bar.[3] Section 11–108(b) provides: "In any action for damages for personal injury in which the cause of action arises on or after July 1, 1986, an award for noneconomic damages may not exceed $350,000." The issue presented boils down to a simple question. Does the cap on nonpecuniary damages apply individually to each plaintiff in a wrongful death action, so that each parent here would receive the full $300,000 award? Or, does the limit of $350,000 apply to the total of the damages awarded to all wrongful-death plaintiffs, so that the total award here to the Bartuccos may not exceed $350,000?

The question of the proper interpretation of the damages cap is, at the time of this Opinion, unresolved by the Maryland Court of Appeals. No reported decision in Maryland has squarely addressed the issue,[4] al-

Alfred L. Scanlan, Jr., Levan, Schimel, Richman, Belman, Abramson & Scanlan, P.A., Columbia, Md., Brian E. Frosh, Bethesda, Md., for plaintiffs.

Jeffrey B. Smith, Kathryn Grill Graeff, Smith, Somerville & Case, Robert K. Nead, R. Harcourt Fulton, Eugene Connor, John Addison Howard, F. Gwinn Miller, P. Paul Cocoros, Phillip W. Wright, Hardwick, Tripoda & Harris, Baltimore, Md., for defendants.

GARBIS, District Judge.

This case arose out of an automobile accident on January 16, 1988, in which Kevin Bartucco was killed. Plaintiffs Eugene F. Bartucco and Linda F. Bartucco are the father and mother of Kevin Bartucco. Eugene Bartucco brought a survival action as personal representative of the Estate of Kevin Bartucco. In addition, both Plaintiffs sued in their personal capacities in a wrongful death action. By virtue of a jury finding that Kevin Bartucco did not endure any conscious pain and suffering, there was no recovery in the survival action. In the wrongful death action, the jury found that the negligence of Defendants Dean Anthony McLain and Robert Lee Young caused the death of Kevin Bartucco. The jury awarded damages in the amount of $300,000 to each of Eugene F. Bartucco and Linda F. Bartucco.[1] This opinion discusses only the matter of the recovery of

---

1. The award to the plaintiffs was entirely for non-pecuniary damages. Under Md.Cts. & Jud. Proc.Code Ann. § 3–904(e) (1989), "For the death of an unmarried child, who is not a minor child, the damages awarded under subsection (c) are not limited or restricted by the 'pecuniary loss' or 'pecuniary benefit' rule ... if: (1) The child is 21 years old or younger...." Kevin Bartucco was 21 years old at the date of the accident, but the statute has been interpreted to include the entire 21st year until the minor turns 22. *See Carolina Freight Carriers Corp. v. Keane,* 311 Md. 335, 534 A.2d 1337 (1988).

2. Unless otherwise indicated, all statutory references in this Opinion will be to the Maryland Courts and Judicial Proceedings Code.

3. In the course of this opinion, the term "damages" is used to refer only to non-economic damages subject to the Maryland damages cap.

4. In *Potomac Elec. Power Co. (PEPCO) v. Smith,* 79 Md.App. 591, 558 A.2d 768, *cert. denied* 317 Md. 393, 564 A.2d 407 (1989), the court held that the damages cap applied to wrongful death actions. The question whether the cap applied to each plaintiff in a wrongful death proceeding was present at the trial level but was not preserved for appeal. *Id.* 79 Md.App. at 624 n. 17, 558 A.2d at 785 n. 17.

In an unreported decision in *Sentz v. Jack Hardesty, Inc.,* No. 1117887 (Anne Arundel Cty. Cir.Ct. November 9, 1989), the Honorable Bruce C. Williams held that the cap should be applied

though some courts have speculated about what the Maryland Court of Appeals would hold.[5] The United States Court of Appeals for the Fourth Circuit has certified this issue to the Maryland Court of Appeals in *Searle v. United States*,[6] and a definitive ruling is anticipated in due course. Despite the pending certification, the Court believes it is appropriate to issue its decision on the matter at this time.[7]

### Textual Considerations

The issue before the Court concerns the interaction of two statutes, *i.e.*, the damages cap and the wrongful death statutes. "In construing a statute, a court must ascertain and carry out the real legislative intent.... If the statutory language contains no ambiguity or obscurity, the court generally looks no further." *In re Criminal Investigation No. 1–162*, 307 Md. 674, 516 A.2d 976, 982 (1986). "When a statute can be fairly read to have more than one meaning, however, the court will examine the statute's subject matter, purpose, and object and consider the consequences flowing from different constructions." *Id.*

The Maryland wrongful death statute provides that "only one action under this subtitle lies in respect to the death of a person." § 3–904(f). This statute states that "an action under this subtitle shall be for the benefit of the wife, husband, parent, and child of the deceased person." § 3–904(a).[8] The amount recovered in such an action shall be divided among all the beneficiaries: "In an action under this subtitle, damages may be awarded to the beneficiaries proportioned to the injury resulting from the wrongful death. The amount recovered shall be divided among the beneficiaries in shares directed by the verdict." § 3–904(c). The Maryland damages cap

to each wrongful death plaintiff individually. Transcript at 8–9.

5. In *Simms v. Holiday Inns, Inc.*, 746 F.Supp. 596 (D.Md.1990) (granting in part and denying in part cross-motions for summary judgment), the Honorable Frederic N. Smalkin of this Court stated: "Had the question been before it, the Court of Special Appeals would have held in *PEPCO* that the damage cap applies to the wrongful death action as a whole, *see* 79 Md. App. at 624 n. 17, 558 A.2d 768, with which the Court of Appeals would agree." Slip op. at 2. Respectfully, I do not agree with this comment by Judge Smalkin.

6. The *Searle* case is an appeal from wrongful death and survival actions brought under the Federal Tort Claims Act. After liability was stipulated by the parties, the case was tried before the Honorable J. Frederick Motz of this Court, who awarded damages in both actions. Although no single award to any of the wrongful death plaintiffs, the surviving spouse and six children of the deceased, exceeded $350,000, the total award for non-pecuniary damages exceeded the cap amount.

On appeal, the panel hearing the case initially issued an unpublished decision, *Searle v. United States*, No. 88–2975 (4th Cir. March 9, 1990) [900 F.2d 255 (table)]. The panel noted that the cause of action in *Searle* arose before the imposition of the damages cap and was not controlled by the cap. Nevertheless, the panel felt that the trial court should have given "considerable deference to the reasonableness established by the legislature for solatium awards and should not exceed that cap without some expression of reasons for such difference." Slip op. at 6. Addressing the issue now before this Court,

the panel concluded that the $350,000 limit applied in the aggregate in a wrongful death action, and the court remanded the case for recalculation of damages consistent with its opinion. After the initial decision was issued, however, motions for rehearing and suggestions for rehearing *en banc* were filed, and on May 31, 1990 the panel certified the damages cap question to the Maryland Court of Appeals.

7. Defendants have suggested that it might be appropriate to await the decision of the Maryland Court of Appeals before entering judgment in this case. There is considerable merit to this suggestion, since it is quite clear to this Court that there are arguments on both sides of the question that are worthy of consideration. Nevertheless, the Court felt that it was preferable to render a decision on the question and to enter judgment. The Defendants raised additional issues which they may wish to pursue on appeal. Entering judgment gives the parties the opportunity to proceed to the Fourth Circuit on these other issues, while awaiting the Maryland Court of Appeals' decision on the damages cap issue. The case will therefore proceed more rapidly toward a final conclusion. Finally, considering the high public interest and sharp differences of opinion regarding the damages cap issue, the Court felt it ought to state the reasons for its decision.

8. These persons are the "primary beneficiaries." If there are no persons who qualify as primary beneficiaries, the action shall be for the benefit of "secondary beneficiaries," who include "any person related to the deceased person by blood or marriage who was wholly dependent upon the deceased." § 3–904(b).

statute provides that "in any action for damages for personal injury ... an award for noneconomic damages may not exceed $350,000." § 11–108(b).

The defendants argue that the texts of these statutes, when read together, compel a holding that one cap applies to all wrongful death plaintiffs combined. First, they argue that since the damages cap statute limits damages in "any action," and the wrongful death statute requires all plaintiffs to participate in "one action," only one cap applies to the entire class of wrongful death plaintiffs. Second, since the cap statute provides that "an award" cannot exceed the cap amount, and the wrongful death statute provides that "the amount recovered" shall be divided among the plaintiffs, it is argued that the "amount recovered," in total, is the "award" that may not exceed the cap. The Defendants' arguments admittedly reflect one possible construction of these two statutes. However, the statutes are susceptible of competing interpretations.

In *Sun Cab Co. v. Walston*, 15 Md.App. 113, 289 A.2d 804 (1972), *aff'd in part, rev'd in part on other grounds*, 267 Md. 559, 298 A.2d 391 (1973), the Court of Special Appeals rejected the argument that the wrongful death statute requires the jury to determine a total recovery first, before dividing it among the plaintiffs. "It is self-evident that in finding damages sustained by two or more persons arising from the same wrongful act, when the damages of each may or may not differ, the jury must of necessity determine the damages sustained by each person before it can arrive at a total." *Id.*, 289 A.2d at 826. Thus, because the wrongful death statute could be read to provide separate "awards" to each wrongful death plaintiff, the cap statute's requirement that "an award" may not exceed the cap could apply to each plaintiff

individually. Therefore, the texts of the two statutes are not unambiguous and do not have a plain meaning which compels a result either way on the issue presented. The existence of a textual ambiguity requires the Court to look to other factors to ascertain the legislature's intent.[9]

This Court does not accept the textual arguments in favor of a single cap for additional reasons. The Defendants' arguments depend on the notion that in choosing the words "any action" and "an award" in the damage cap statute, the legislature intended to refer to terms used in the wrongful death statute. That notion is simply not supportable. The damage cap statute makes no reference at all to the wrongful death statute. The argument that the legislature meant to use the words "action" and "award" as subtle echoes of terms in the wrongful death statute is refuted by other passages that suggest that the legislature did not intend any such cross-reference.

By its own terms the damages cap statute applies to an "action for ... personal injury." It is not perfectly clear that the cap would even apply to a wrongful death situation. Indeed, the Court of Special Appeals had to address this issue in detail, before deciding that the cap did apply to wrongful death claims. *See PEPCO v. Smith*, 558 A.2d at 782–85.

In addition, the two statutes contain different descriptions of the damages involved. In the damage cap statute, the term "noneconomic damages" is defined to include "pain, suffering, inconvenience, physical impairment, disfigurement, loss of consortium, or other nonpecuniary injury." § 11–108(a)(1). These are the types of damages typically sustained by a party who, himself or herself, has been directly injured by a defendant. On the other hand,

---

**9.** The Court acknowledges that other courts have construed damages cap statutes to apply to the whole class of wrongful death plaintiffs, rather than to individual plaintiffs. *See PEPCO v. Smith*, 558 A.2d at 785 n. 17 (citing *Yates v. Pollock*, 194 Cal.App.3d 195, 239 Cal.Rptr. 383 (1987) and *Hallett v. Town of Wrentham*, 398 Mass. 550, 499 N.E.2d 1189 (1986)). The *PEPCO* decision did not cite the texts of those statutes,

and given the court's holding that the issue had not been preserved on appeal, it is clear that the court did not undertake an examination of the merits of those decisions under those states' statutes. Such an examination would be necessary in considering whether those cases are useful in analyzing the text of the Maryland cap statute.

in a wrongful death action, the Plaintiffs may recover for "mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, care, attention, advice, counsel, training, or guidance." § 3–904(e). These are the types of damages typically sustained by a plaintiff due to a defendant's wrongfully causing the death of a family member. In view of the decision in *PEPCO v. Smith, supra,* this Court recognizes that the damage cap does apply to a wrongful death action. However, this Court believes that the damages cap's failure to echo the language describing wrongful death damages undermines any claim that the legislature intended to refer to the wrongful death statute with respect to the terms "action" and "award."

Moreover, if all plaintiffs were subject to a single cap, the two statutes would contain conflicting provisions regarding the role of a jury in a wrongful death action.[10] The wrongful death statute requires that the "amount recovered shall be divided among the beneficiaries in shares directed by the verdict." § 3–904(c). However, the damages cap statute mandates that "[i]n a jury trial, the jury may not be informed of the [damages cap] limitation...." § 11–108(d)(1).

Absent a separate damage cap for each plaintiff, it would be difficult to square the need for the jury to consider each plaintiff separately in determining his or her appropriate recovery with the prohibition against informing the jury of the cap. Although the jury would be required to make an award to each plaintiff in its verdict, the jury could not be told that the award it makes to one plaintiff might be affected by the award it makes to another plaintiff. Thus, a jury would not be aware that its award to a grieving mother could be reduced by an award rendered to her estranged ex-husband. It is difficult to believe that the legislature intended such a result.

The Court is also troubled by the absence of statutory guidance as to the manner in which to reduce multiple awards which, in total, exceed a single damages cap. Section 11–108(d)(2) provides: "If the jury awards an amount for noneconomic damages that exceeds the limitation established under subsection (b) of this section, the court shall reduce the amount to conform to the limitation." With a single plaintiff, a court can simply reduce the verdict to the cap amount. However, with multiple awards to multiple plaintiffs, a court would have to choose from among several possible methods to bring the total within a single cap. Having to decide which method to use presents significant problems in practical application of a single cap, as noted later in this opinion. In drafting the cap statute and the 1989 amendment, the legislature did not acknowledge these difficulties or attempt to solve them, which suggests that the legislature did not intend to impose a single cap.

For all of these reasons, rooted in the texts of the statutes, the argument that in using the words "any action" the legislature intended a single cap to apply to the "one action" permitted in wrongful death is unconvincing. The alleged unexpressed reference from one statute to another is refuted by other passages that indicate that no such reference was intended. The texts of the statutes and prior case law lead equally well to the conclusion that the cap on "an award" should apply to each "share" recovered by each wrongful death plaintiff. Because the texts of the statutes on this point are ambiguous, the Court must look to other considerations to determine the legislature's intent.

**10.** The legislature amended the cap statute following a decision by the Honorable Paul V. Niemeyer of this Court in *Franklin v. Mazda Motor Corp.,* 704 F.Supp. 1325 (D.Md.1989), a personal injury action not involving a wrongful death claim. In holding that the cap statute did not violate the federal or state constitutions, the Court noted that the question was ripe because "[t]he language of the statute here supports the conclusion that the jury should be instructed not to return a verdict for noneconomic damages in excess of $350,000." *Id.* at 1328. The Court thus clearly stated that a jury would be instructed of the existence of the noneconomic damages limitations cap and the amount. It did not take long for the Maryland legislature to react to this decision and enact § 11–108(d)(1), which is quoted in the text above.

## Policy Considerations

■ Since the texts of the statutes as they interact are ambiguous, in attempting to determine the legislature's intent on this question the Court may look to the policies the statutes advance. *See Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 517 A.2d 730, 734 (1986); *Sinai Hospital of Baltimore, Inc. v. Department of Employment and Training*, 309 Md. 28, 522 A.2d 382, 388 (1987) (court "may also consider the particular problem or problems the legislature was addressing, and the objectives it sought to attain").

The cap on nonpecuniary damages was enacted in response to a perceived crisis in the availability of insurance in Maryland. As discussed in detail by Judge Niemeyer in his decision upholding the constitutionality of the cap, the legislature's goal was to limit jury awards of nonpecuniary damages, which were, according to the Governor's Task Force to Study Liability Insurance, "presently uncontrolled." *Franklin v. Mazda Motor Corp.*, 704 F.Supp. at 1328. The Task Force wrote:

> The ceiling on noneconomic damages will help contain awards within realistic limits, reduce the exposure of defendants to unlimited damages for pain and suffering, lead to more settlements, and enable insurance carriers to set more accurate rates because of greater predictability of the size of judgments. The limitation is designed to lend greater stability to the insurance market and make it more attractive to underwriters.

*Id. See also PEPCO v. Smith*, 558 A.2d at 784 ("the unpredictability and speculative nature of noneconomic damage awards has been cited as a basis for enacting a cap on such damages").

The policy advanced by the cap—more accurate determination of a carrier's potential exposure in order to set affordable insurance rates—is advanced equally well by use of single or individual caps. The class of beneficiaries in a potential wrongful death action is clearly defined and limited. Statistics are surely available regarding, for example, marriages and divorces, family size, life expectancy, and other pertinent information. With such information, an insurer should be able to predict its potential exposure for nonpecuniary damages in a wrongful death action, perhaps expressed as a multiple of the cap amount itself.[11]

The policy support for requiring all wrongful death claims to be brought in one action has little to do with the policy supporting a noneconomic damage cap. Allowing only one action serves to consolidate in one single proceeding all wrongful death claims arising out of the death of a particular person. Even in its early version, the wrongful death statute provided that " 'not more than one action shall lie for and in respect of the same subject-matter of complaint.' " *State, to Use of Bashe v. Boyce*, 72 Md. 140, 19 A. 366, 367 (1890). In *Boyce*, the Maryland Court of Appeals held that the same wrongful-death plaintiffs could maintain separate actions against separate defendants arising out of one decedent's death, despite the quoted provision. The provision's object, the court stated, "was to protect a defendant from being vexed by several suits instituted by or in behalf of different equitable plaintiffs for the same injury, when all the parties could with perfect convenience be joined in one proceeding." *Id.*, 19 A. at 367. This procedural choice, made over a century ago, was

---

11. It is true that with individual caps the absolute amount of compensation awarded would be increased, since the total awarded to a class of wrongful death plaintiffs could exceed one single cap. But this Court understands the legislature's motivation to have been to foster predictability, not simply to limit recovery. While concerns were raised about the amount of recoveries and the impression that they were becoming excessive, the legislature apparently did not undertake to establish a single "pot" of $350,000 for liability for causing a wrongful death. If it had wished to do so, the legislature could have chosen language to expressly accomplish this result. *See, e.g., Bulala v. Boyd*, 239 Va. 218, 389 S.E.2d 670, 674 (1990) (upholding Virginia statute mandating that "the total amount recoverable for any injury to, or death of, a patient" shall not exceed $750,000). But the legislature addressed instead the problem of predictability, and predictability *per se* is fostered equally well by a single cap or individual caps.

meant to protect a defendant from several *suits*, not from several judgments or awards to several prevailing *plaintiffs*.

Finally, the purpose of the wrongful death statute—to compensate the survivors of the deceased—would tend to favor individual caps. The wrongful death statute was enacted to compensate the survivors of a deceased person for the loss they sustained due to the decedent's death. *See generally Globe American Cas. Co. v. Chung*, 76 Md.App. 524, 547 A.2d 654 (1988), *cert. granted*, 314 Md. 508, 551 A.2d 874 (1989) (discussing the distinction between the survival and wrongful death actions delineated in *Stewart v. United Elec. Light and Power Co.*, 104 Md. 332, 65 A. 49 (1906)). Damages in a wrongful death action "are measured in terms of *harm to others* from the loss of the victim," and the surviving relatives "act in their own behalf." *Id.*, 547 A.2d at 655 (emphasis in original). Although when it was first enacted in 1852 the wrongful death statute allowed the surviving relatives to sue only for their pecuniary loss from the victim's death, the statute was amended in 1969 to allow the survivors to recover for the pain and grief they suffered due to the person's death. *See Todd v. Weikle*, 36 Md.App. 663, 376 A.2d 104, 113 (1977).[12]

In order to compensate each survivor for his or her grief, the wrongful death statute requires a jury to consider the wrongful death plaintiffs individually, rather than as a class. The statute provides: "damages may be awarded to the beneficiaries proportioned to the injury resulting from the wrongful death. The amount recovered *shall be divided* among the beneficiaries *in shares directed by the verdict*." § 3–904(c) (emphasis added). The statute was clearly designed to compensate each plaintiff individually for the loss each plaintiff suffered. A single damages cap would treat the beneficiaries collectively rather than individually, contrary to the purpose of the wrongful death statute.[13]

In addition, a single cap would apply differently to people in different family situations, for no sound policy reason. In the specific context of the case at bar, applying a single cap to these Plaintiffs might not appear to be shockingly wrong. Mr. and Mrs. Bartucco might be viewed as a single unit. They remain married, they continue to live together, and there is no indication of anything but complete harmony between them.

However, the law being interpreted must be applied to all possible family situations. The issue could well have arisen, and certainly will arise, in a case in which the deceased's parents were divorced and at odds. If the mother had remained close to the child and the father had not, and the jury awarded damages of $350,000 to the mother and $100,000 to the father, then the inequity of a single cap would be readily apparent. The recovery of the mother would be reduced simply because her estranged ex-husband was also grieving, and each parent's award would have to be reduced due to the other's participation in the suit. Indeed, the recovery of one would be affected positively if the other had failed to sue, had filed suit late, or had been dismissed from the case on procedural rather than substantive grounds. Thus, from the point of view of one wrongful death Plaintiff, the amount of the recovery would be affected fortuitously by circumstances relating solely to the cause of action of another person.

12. Nonpecuniary damages are allowed under the modern wrongful death statute if a spouse or minor child dies, or, under certain conditions, if an unmarried child who is not a minor dies. The description of the nonpecuniary damages recoverable, quoted *supra*, is substantially the same in both circumstances.

13. While one of the purposes of the damages cap was surely to curb excessive jury awards, it is hardly excess for the jury to do what the wrongful death statute requires them to do and consider each plaintiff in determining the appropriate compensation. The application of a single cap would, in the name of curbing "excess," thwart the policy of the wrongful death statute to compensate each qualified plaintiff for the harm each such person suffered. This Court will not construe the cap statute to swallow up the clear legislative intent of the wrongful death statute without express legislative direction that that is the intended result.

In sum, the divergent purposes of the two statutes support this Court's conviction that the textual arguments in favor of one cap are unpersuasive. The policy served by the damages cap statute, predictability in tort recovery for nonpecuniary damages in order to stabilize insurance rates, is equally served by one single cap or by individual caps. The provision requiring that all wrongful death claims arising from a given death be brought in one action was prompted by considerations that have nothing to do with the policy supporting a cap on damages. Thus, no connection between the statutes should be drawn based simply on the cap statute's use of the term "any action." Finally, the policy the wrongful death statute advances, individual compensation for each person grieving over the loss of a loved one, is better served by the application of separate damage caps.

*Practical Application*

In construing a statute susceptible of more than one meaning, the court may consider "the consequences resulting from one meaning, rather than another, and adopt the construction which promotes the most reasonable result in light of the objectives and purpose of the enactment." *Rucker v. Comptroller of the Treasury,* 315 Md. 559, 555 A.2d 1060, 1063 (1989). *See also State v. Intercontinental, Ltd.,* 302 Md. 132, 486 A.2d 174, 176 (1985) (court may consider "the consequences of a proposed construction and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense").

Holding that a single cap applies in a multi-plaintiff wrongful death case would create tremendous difficulties in practical application. To allow the jury to make the award it chooses, unaware of the cap, leaves open the possibility that some or all of the wrongful death plaintiffs would receive awards in excess of the cap, or that, even if no award were in excess of the cap, the total award to all plaintiffs would exceed the cap. Such a situation would require the judge to reduce the damages each plaintiff recovered in order to bring the total within the cap. As noted, however, the statute does not provide any guidance to a trial judge attempting to reduce a multitude of awards to within a single cap amount.[14] Without guidance from the jury or the legislature, the judge would have no factual or legal basis on which to reduce the verdict.

The *Searle* case, *supra,* which was certified by the Fourth Circuit to the Maryland Court of Appeals, illustrates the difficulties that would arise from a single cap. In that case, Judge Motz awarded damages for solatium arising from the wrongful death of a wife and mother, in the following amounts:

| Plaintiff | Award |
| --- | --- |
| Surviving Spouse | $ 250,000 |
| Four-year old daughter | $ 300,000 |
| Five-year old son | $ 300,000 |
| Fourteen-year old daughter | $ 150,000 |
| Fifteen-year old daughter | $ 125,000 |
| Seventeen-year old daughter | $ 75,000 |
| Eighteen-year old son | $ 50,000 |
| Total | $1,250,000 |

Assuming that the *Searle* case were governed by the damages cap and that a jury had made these awards, one can see starkly presented a situation in which a single cap would present disturbing problems in practice. If a jury had known that there was a total amount of $350,000 to distribute, it might well conclude that there should be no reduction of the $250,000 award to the surviving spouse and that the remaining amounts should be allocated among the children. Or, a jury could conclude that, given a cap, the children more strongly deserve their recoveries and that the spouse's recovery should be reduced or eliminated to increase the amount available to the children. When a judge has to make such decisions, the jury's role in determining damages is decreased. Without the aid of the jury, the judge has no factual basis for deciding how to reduce the awards. Likewise, without guidance from the legislature, the judge has no legal basis for

---

**14.** Section 11–108(d)(2) simply provides: "If the jury awards an amount for non-economic damages that exceeds the limitation established under subsection (b) of this section, the court shall reduce the amount to conform to the limitation."

making that decision. While the award could be reduced proportionally, other methods could reasonably be used. For example, the highest awards could be reduced in order to equalize recoveries. Or, all awards could be reduced equally by the same dollar amount.

In a situation that potentially could have required the court to allocate a multi-plaintiff verdict in excess of the cap, the court in *PEPCO v. Smith* refused to undertake such a division. In that case, the wrongful death plaintiffs had agreed to have the jury return a lump sum verdict, and then objected when the judge remitted the sum awarded to the cap amount. The court noted that the "decedent lived with her mother who was not married to decedent's father. Decedent's father lived elsewhere. It would not be unreasonable to assume that most of the damage award was for the injuries to decedent's mother under the statute." *PEPCO*, 558 A.2d at 785 n. 18. Nevertheless, in holding that, having agreed to a lump sum verdict, the plaintiffs could not complain after the trial judge remitted it to the cap amount, the court stated: "To hold otherwise would require this court to make evidentiary assumptions unsupported by any facts that all plaintiffs in a wrongful death action have sustained damages that are monetarily the same. This we refuse to do." *Id.*, 558 A.2d at 785.

Similarly, if a single cap applied to the entire class of plaintiffs, the judge would have to bring multiple verdicts within a single cap without any factual or legal basis for doing so. Because a holding in favor of a single cap would lead to this illogical and unreasonable result, the statute should be construed so that individual caps apply.

*Conclusion*

In addition to the textual, policy and practical reasons enumerated above, this Court believes that individual damage caps should apply because of the nature of a person's grief at the loss of a loved one. Grief is solitary pain. While the support of family members also grieving can help ease the burden to some extent, the loss ultimately must be borne alone.

The wrongful death statute was amended in 1969 because the legislature recognized that noneconomic damages caused by a wrongful death should be compensated, however imperfectly, by financial payment from the responsible party.[15] The damages cap was enacted in 1986 to put a strict dollar limit on the amount of money a jury might equate with a person's noneconomic loss; it was not enacted in order to limit the compensation for one person's suffering simply because another family member also suffered a loss. These statutes should be construed to recognize and compensate each individual's grief.

For the foregoing reasons, this Court holds that the Maryland cap on nonpecuniary damages should be applied individually to each wrongful death plaintiff, rather than to the class as a whole.

**15.** Unless one has, as has this Court, been required to place a monetary price upon the grief loving parents suffered due to the wrongful death of their child, one cannot fully appreciate the immense difficulty of the task. As expressed by Judge Niemeyer, in *Franklin v. Mazda Motor Corp.*, 704 F.Supp. at 1332, financial awards can never truly compensate grief and emotional pain. "[T]he very nature of pain and suffering renders it incapable of measurement without speculation and guess work."