**BILBO v. LEWIS et ux.**

No. 4118.

Court of Civil Appeals of Texas. Texarkana. Dec. 21, 1931.

Rehearing Denied Jan. 7, 1932.

Alfred McKnight and Cantey, Hanger & McMahon, all of Fort Worth, for appellant.

Geo. C. Kemble and James M. Floyd, both of Fort Worth, for appellees.

LEVY, J.

C. T. Lewis and his wife brought the suit to recover damages for the wrongful death of their son against V. C. Bilbo, a public carrier operating a truck line in the state, and to recover against the American Indemnity Company, a corporation, upon guaranty insurance to pay the judgments against V. C. Bilbo as motor carrier. The plaintiffs' son, Wesley Lewis, sixteen years of age, while riding his bicycle on Calhoun street in the city of Fort Worth, was run over by a truck

being operated by an employee of the defendant V. C. Bilbo, and quickly died as result of the injuries received. The negligence alleged was in the particulars of failure to keep a proper lookout, and to give warning and to give a signal of intention to change the direction of the truck, and in turning to the right before the way was clear. The American Indemnity Company was impleaded upon the allegation that it had issued policies of insurance as an undertaking of guaranty to pay all judgments recovered against V. C. Bilbo as a motor carrier based on damages for personal injuries, as provided by section 13 of the Acts of 1929, p. 698, c. 314.

The American Indemnity Company and V. C. Bilbo each filed timely pleas of misjoinder of parties, which the court sustained, and dismissed the American Indemnity Company from the suit as a party defendant to the cause.

The defendant, V. C. Bilbo, answered by general denial, and pleaded that the deceased was guilty of contributory negligence in failing to keep a proper lookout for his own safety, and in driving too close to the truck. It was specially alleged that the deceased fell under the wheels of the truck and suffered injury solely through his own act of riding up to the side of the truck and catching hold on it with one hand, leaving only one hand to manage, and thereby losing control of, the bicycle, and causing the wheels of the bicycle to strike against the truck and the bicycle to fall over and the deceased to fall under the wheels of the moving truck.

On November 19, 1929, in the daytime, Wesley Lewis, a boy sixteen years of age, and employed by a drug company as a delivery boy, was riding his bicycle on Calhoun street in the city of Fort Worth, and was run over by a truck being operated by an employee of the defendant V. C. Bilbo. The boy died quickly as a result of the injuries received by him. Both the boy and the truck were going north on Calhoun street between Twelfth and Thirteenth streets at the time of the injury. The evidence is conflicting as to the details respecting the injury. The evidence in behalf of the plaintiff goes to show that the boy was riding on his bicycle at a distance of about fifteen feet ahead of the truck, and the truck was making an effort to get ahead of the boy. The truck was a large one, and loaded with boxes, and was going at a speed between fifteen and twenty miles an hour. A Chevrolet car was ahead of them, and was parked by the curb of the street on the right side of the street, and the boy and the truck both proceeded around the Chevrolet car. The truck in turning around the Chevrolet car swerved to the right, and the body of the truck hit the bicycle, and "the bicycle went under the Chevrolet car," and the boy fell by the car, the rear wheel of the truck passing over the boy's body. The truck did not run over the bicycle, but over the body of the boy. On the other hand, the evidence in behalf of the defendant goes to show substantially that the truck had passed the boy about the intersection of Thirteenth and Calhoun streets, and that the boy caught up with the truck and was trying to ride his bicycle by the side of it, holding by one hand to the truck, and in attempting to pass the Chevrolet car the bicycle was caught between the truck and the car, and the boy was caused to fall from his bicycle and under the rear wheels of the truck. There is some evidence in behalf of the defendant going to show there was no car parked at the curb. The following special issues were submitted to the jury and answers made, viz.:

"Immediately prior to the accident in question, was the driver Bickford using ordinary care to keep a reasonable lookout to keep the truck from colliding with the bicycle of Wesley Lewis? Answer: No."

"Was such failure, if any you have found, a proximate cause of Wesley Lewis being run over by the truck? Answer: Yes."

"At the time of passing Wesley Lewis, or thereafter, and prior to the injury to Wesley Lewis, did Bickford change the course of his truck to the right? Answer: Yes."

"Did Bickford use ordinary care to see that the road was reasonably clear of Wesley Lewis before making such change of his course to the right, if he did? Answer: No."

"Was such failure, if any you have found, a proximate cause of the injury to Wesley Lewis? Answer: Yes."

"Was the failure of Bickford to give a visible or audible signal of his intention to change the course of his truck, if he did change it, a proximate cause of the injury to Wesley Lewis? Answer: Yes."

"Was the failure of Bickford to sound audible and suitable signals before passing Wesley Lewis a proximate cause of the injury to Wesley Lewis? Answer: Yes."

"At the time of and just immediately prior to the accident was Wesley Lewis using ordinary care to keep a reasonable lookout for vehicles traveling, as the defendant's truck was, at the said times? Answer: Yes."

"Was Wesley Lewis negligent in riding his bicycle where he did with reference to the position of the automobile at the street curb on the occasion in question? Answer: No."

"Just prior to the time that Wesley Lewis realized he was in danger, if he did, was he holding onto the truck or attempting to catch hold of same? Answer: No."

"Did the accident to Wesley Lewis happen without any negligence on the part of either Bickford or Wesley Lewis? Answer: No."

"Just prior to the accident in question did the said Wesley Lewis attempt to drive his bicycle between the defendant's truck and an

automobile parked along the curb? Answer: No."

"Was the negligence, if any you have found, on the part of the said Wesley Lewis, as inquired about in the preceding question, a proximate cause of or did it contribute approximately to cause his injuries and death? Answer: No."

"Just prior to the accident involved in this suit did Wesley Lewis attempt to drive around an automobile parked by the side of the curb in front of him? Answer: No."

"Just prior to the accident did Wesley Lewis change the course of his bicycle with the intention of driving his bicycle around an automobile in front of him? Answer: No."

In keeping with the verdict, the court entered judgment for the plaintiff in the sum of $12,000. By remittitur of the amount of $4,500, the judgment was modified and reduced to $7,500.

V. C. Bilbo has appealed from the judgment against him, and the plaintiffs have filed a cross-appeal from the judgment dismissing the American Indemnity Company as a party to the cause of action. The points on appeal by V. C. Bilbo largely relate to the form of submitting the special issues, the definition of proximate cause, the overruling of a motion for continuance, the amount of the verdict, and misconduct of jurors.

A motion was made for continuance for the absence of the witness Cook in the employ of a transfer company at Dallas. In the bill of exception appears evidence heard by the court pertaining to the absence of the witness and the diligence used to obtain his evidence. In the light of the evidence, it is believed the trial court's conclusion in respect to the diligence used in securing the attendance of the witness, as involved in the order overruling the continuance, may not be disturbed, for such conclusion appears warranted.

The issues submitted to the jury may not be regarded as upon the weight of the evidence or unsupported or not warranted by the evidence.

It is believed all of the assignments of errors presented by the appellant, V. C. Bilbo, should be overruled, and the judgment accordingly should be affirmed, except and unless the alleged misconduct of the jury constitutes reversible error.

As relating to the alleged misconduct of the jury, the evidence reflects that, after the jury had retired to consider their verdict, and after they had answered all the special issues submitted up to the issue of fixing the amount of the damages, and while the amount of damages allowable was under consideration, some juror referred to the war risk insurance policy issued in the World War which provided $10,000 as the amount payable in the event of the death of the soldier. It was observed that the amount of the policy was the sum "Uncle Sam valued a man at during the war." In respect to the matter, the court made findings as follows:

"On motion for new trial in this cause, I find that:

"(1) During the deliberation of the jury upon the amount of the damages, some discussion arose of the amount at which 'Uncle Sam,' meaning the United States Government, valued the life of a soldier during the world war, some juror stating that it was $10,000.00.

"(2) After this discussion arose, all the jurors, in the interest of reaching a verdict, wrote down on a slip of paper the amount of damages each of them favored as the answer to be given to the amount of damages. The juror McPherson, and two others wrote down $10,000.00. The figures written down by the other jurors were in excess of this amount. The juror McPherson was probably influenced in writing down $10,000.00 as the amount he would allow by the discussion above set out, though he could not say that he would not otherwise have been for that figure. All the jurors thereafter voted on whether they would or would not allow $11,000.00 as the verdict, and failure to agree on this figure, and then all of the jurors unanimously voted for $12,000.00, which was the amount of the verdict. The discussion mentioned in paragraph one did not influence the juror McPherson to come up to the final figure of the verdict, to-wit: $12,000.00.

"(3) The verdict is excessive and finds more damages than is just.

"(4) $7,500.00 is a fair amount of damages.

"I conclude that:

"(1) The error of the Jury in mentioning Uncle Sam's valuation of a soldier was harmless, and did not influence the amount of damages.

"(2) The verdict is excessive by $4,500.00.

"(3) The plaintiff should be required to remit his verdict down to the amount of $7,500.00, or a new trial be granted."

The juror McPherson testified: "We had answered all other questions before we took up the question of the amount of damages. The amount of damages was suggested all the way from $6,000.00 up to the full amount of $30,000.00. After I had first thought to vote for $6,000.00 some one of the jurors remarked that Uncle Sam valued a man at $10,000.00 during the war. I guess that had some influence on me, in increasing my amount from $6,000.00 to $10,000.00. It gave me an idea that it was a pretty good way to get at the valuation of the man as he was dead. After I agreed to $10,000.00, the juror who made the remark and the foreman each agreed to $10,000.00. Later the three of us agreed to go up to the $12,000.00, and all the others agreed to come down to $12,000.00."

The following cases sustain the point of appellant that there was misconduct constituting reversible error: Rwy. v. Lewis (Tex. Com. App.) 5 S.W.(2d) 765; Id. (Tex. Com. App.) 10 S.W.(2d) 534; Simmonds v. Rwy. (Tex. Com. App.) 29 S.W.(2d) 989; Southern Traction Co. v. Wilson (Tex. Com. App.) 254 S. W. 1104; City of Waco v. Darnell (Tex. Com. App.) 35 S.W.(2d) 134.

The cases of Wilson and Darnell go to opposing the view that the taint of misconduct can be removed and the error cured by remitting the part of the judgment in excess of that contended for by the lowest juror. The objection rests upon the ground, quoting, "We have no way of knowing that the jury would have reached a verdict at all, had said misconduct not occurred." In the instant appeal the amount determined upon by the lowest juror, McPherson, before the war risk insurance policy was referred to, was $6,000. All the jury unanimously agreed upon the final amount of $12,000, which was the verdict. If the wrong done in the present verdict consisted, as appears to be the grounds, in excessive amount of recovery or wrongful measure of the amount, then any removal of the excess above the tainted line would be remedial, and the appellant would be in no position to complain of any wrong done. After the rotten part of an apple is cut out, the remaining sound part may not be regarded as at all events absolutely harmful for any use. An agreement by the jury upon the $12,000 verdict necessarily included an agreement on the part of the jury to an amount as much as $6,000, as contended for by the lowest juror. This court would be inclined to allow a remittitur as curing the error of misconduct, but in deference to the cases mentioned follows them. The judgment will accordingly be reversed, and the cause remanded as respects appellant, V. C. Bilbo.

The plaintiffs in the suit, C. T. Lewis and wife, have filed a cross-appeal, seeking a review of the dismissal from the suit of the American Indemnity Company as a party defendant in the cause of action. The real object and purpose of the pleading was to have the American Indemnity Company dismissed from the suit for lack of any liability of the company, and, although the plea was named as one of misjoinder, yet its force and effect was that of a general demurrer to the alleged cause of action. The matter complained of appeared on the face of the petition, and was fundamental to recovery and to liability. But it becomes immaterial whether considered as demurrer or a plea of misjoinder the ruling of the court was not error. The petition alleged, as the liability of the American Indemnity Company, the issuance of the policy of insurance in compliance with the statutory requirement, obligating the American Indemnity Company to "pay to the extent of $25,000.00 all judgments which might be recovered against the said V. C. Bilbo based on claims for loss or damages from personal injuries arising out of the actual operation of such motor carrier." Section 13 of the Acts of 1929, page 698, requires public motor carriers for hire to carry insurance in protection of "all judgments which may be recovered against the motor carrier * * * based on claims for loss or damages from personal injury or loss of, or injury to, property occurring during the term of the said bond or policy and arising out of the actual operation of such motor carrier." The provision of the policy for payment of "judgments based on damages from personal injury" arising out of operation of the motor vehicles is not broad enough to entitle recovery on judgments which are based on damages which result from death. A "personal injury" by the motor carrier's wrongful act, neglect, or default is the basis of the liability of the indemnity company under the policy, and under the terms of the statutory enactment. No liability is provided for under the terms of the statute when the motor carrier's wrongful act or neglect produces death and the damages sued for are only which result from the death. In an action in favor of a person injured, there are elements of damages in it additional to damages allowable to the legal representative of the deceased in an action for his wrongful death. 4 Sutherland on Damages, § 1241; 17 C. J. p. 762. In actions for death, damages must be restricted to pecuniary loss. 4 Sutherland on Damages, § 1263. An action for death is legally regarded as a different cause of action from an action for personal injury where death does not result. 13 Cyc. 310. Therefore it is believed that the terms of the statute may not be regarded as including damages for wrongful death. Fernwood Mining Co. v. Pluna, 138 Ark. 459, 213 S. W. 397; Northern Pac. Rwy. Co. v. Adams (C. C. A.) 116 F. 324; Prounty v. City of Chicago, 250 Ill. 222, 95 N. E. 147; Turner v. Cross, 83 Tex. 218, 18 S. W. 578, 15 L. R. A. 262; Fleming v. Texas Loan Agency, 87 Tex. 238, 27 S. W. 126, 26 L. R. A. 250.

The judgment is accordingly affirmed as respects the American Indemnity Company.

### Motion for Rehearing.

The appellees, C. T. Lewis, and wife seek a rehearing upon the grounds that: (1) The particular policy issued in this case by the American Indemnity Company did in fact provide, although not alleged in the petition, for indemnity against "injury to or death of any person or persons through such operation or such vehicles," and (2) the remittitur of $1,500 here offered be allowed as curing any error of misconduct of the jury. In respect to the policy in suit, the affirmance was upon the ground that its terms did not include recovery for wrongful death. Taking the suggestions now made as to the terms of the par-

ticular policy issued in the case, a recovery, if at all, would be upon a policy of insurance resting purely under contract as distinguished from and entirely apart from a policy issued, and intended to be issued, in compliance with the terms of the statute. The affirmance therefore should be without prejudice in any suit brought by the appellants C. T. Lewis and wife on such policy as a policy rising out of pure contract and independent of statutory requirement.

In the motion for rehearing in the case of Estep v. Bratton (Tex. Civ. App.) 24 S.W.(2d) 465, 471, the conclusion of Associate Justice Funderburk is strikingly correct, viz.:

"The record carries no suggestion that the alleged misconduct could have possibly influenced the verdict of the jury further than to add $2,000 to the amount of it. We have no doubt that by making the judgment $3,000 all possible influence of the misconduct will be rendered harmless. To hold otherwise would be tantamount to holding that once misconduct is shown to exist it can never be held to be harmless."

We adopt that ruling in the present case, and accordingly grant the motion for rehearing and affirm the judgment upon the remittitur as here offered of $1,500; the costs of the appeal to be paid by the appellees C. T. Lewis and wife.