620 A.2d 905

**UNITED STATES of America**

v.

**Glenn D. STREIDEL et al.**

**Misc. No. 21, Sept. Term, 1992.**

Court of Appeals of Maryland.

March 11, 1993.

Motion for Reconsideration Denied April 21, 1993.

Marc Richman, Stuart M. Gerson, Asst. Atty. Gen., Washington, DC, Richard C. Bennett, U.S. Atty., Baltimore, and Robert S. Greenspan, Washington, DC, all on brief, for appellant.

David M. Funk, Richard A. Froehlinger, III, Shapiro and Olander, Baltimore, amicus curiae, for Medical Mut. Liability Ins. Soc. of MD.

Michael T. Wharton, David A. Roling (Wharton, Levin, Ehrmantraut, Klien & Nash, all on brief), Annapolis, amicus curiae, for Product Liability Advisory Council, Inc. and The Motor Vehicle Mfrs. Ass'n of the United States Inc.

George W. Shadoan (Shadoan and Michael, both on brief), and Solomon L. Margolis, on brief, Rockville, for appellee.

Paul D. Bekman, Daniel M. Clements, Scott R. Scherr, Baltimore, amicus curiae, for Maryland Trial Lawyers Ass'n.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ELDRIDGE, Judge.

The United States Court of Appeals for the Fourth Circuit, pursuant to the Uniform Certification of Questions of Law Act, Maryland Code (1974, 1989 Repl.Vol.), §§ 12–601 through 12–609 of the Courts and Judicial Proceedings Article, has certified, in this wrongful death action, the following question to this Court:

"Whether the Maryland solatium cap of $350,000 is applicable to each claimant of solatium, or is it a comprehensive overall solatium maximum applicable only once, no matter how many claimants there are."

The facts relevant to the question are as follows. The parents of Marc Streidel filed in the United States District Court for the District of Maryland a wrongful death action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*[1] The United States conceded liability for the death of the Streidel's son.[2] The District Court (Garbis, J.), determined that each parent should be awarded $500,000 in noneconomic or solatium damages. Judge Garbis, pursuant to Maryland Code (1974, 1989 Repl.Vol.), § 11–108 of the Courts and Judicial Proceedings Article, then reduced the awards to $350,000 for each parent.

The United States appealed to the United States Court of Appeals for the Fourth Circuit on the grounds that the awards to the parents were generally excessive and that the $700,000 total award of solatium damages exceeded the amount allowed under § 11–108 of the Courts and Judicial Proceedings Article. Thereafter, the Court of Appeals for the Fourth Circuit certified to this Court the previously quoted question of law.

The certified question assumes as a threshold matter that the noneconomic damages cap found in § 11–108 applies to a wrongful death action. In response to this threshold issue, the United States argues that the cap does apply to wrongful death actions, relying on the holding of the Court of Special Appeals in *Potomac Electric v. Smith*, 79 Md.

---

1. Actions under the Federal Tort Claims Act are generally governed by the substantive "law of the place where the act or omission occurred." 28 U.S.C. § 2672. Since the Government's alleged negligence in this case occurred in Maryland, Maryland law, including the Maryland Wrongful Death Act, Code (1974, 1989 Repl. Vol.), § 3–901 *et seq.* of the Courts and Judicial Proceedings Article, is applicable.

2. Marc Streidel's tragic death occurred when the six year old attempted to peer into an unsecured mailbox to see where the letters went. The mailbox fell on top of him, and he died shortly thereafter.

App. 591, 558 A.2d 768, *cert. denied,* 317 Md. 393, 564 A.2d 407 (1989). In its brief in this Court the United States contends that the cap statute is directed toward "damages for personal injury" and that the damages recoverable in a wrongful death action are for the personal injuries to the beneficiaries themselves. It states that the term "personal injury" encompasses more than bodily injury and includes an injury which is "an invasion of personal rights," an injury which arises from "anguish [or] a sense of degradation," or an injury which "aris[es] out of civil rights discrimination." (Reply brief of the United States at 3–4). In addition, the United States argues that the legislative history of the cap statute supports the view that the General Assembly intended that the cap apply to damages recoverable in a wrongful death action. The United States also argues that the cap on noneconomic damages applies to an entire wrongful death action in the aggregate, regardless of the number of beneficiaries.

■ The plaintiffs contend that the cap on noneconomic damages does not apply to a wrongful death action. Their argument is based upon the language of the statute which expressly states that it controls "any action for damages for personal injury in which a cause of action arises on or after July 1, 1986," and upon the contention that the Wrongful Death Act provides for different damages than those available in a personal injury action. The plaintiffs also argue that in order to apply the cap, a jury would be required to itemize the damages awarded. Because the General Assembly provided for such itemization in personal injury actions, § 11–109 of the Courts and Judicial Proceedings Article, but did not provide for such itemization in wrongful death actions, the plaintiffs assert that the General Assembly did not intend the cap to apply in wrongful death actions. The plaintiffs also argue that if this Court were to decide that the cap applied to wrongful death actions, the cap should be interpreted to impose a limitation upon the recovery of noneconomic damages for each beneficiary in a wrongful death action.

We shall not reach the ultimate question certified by the United States Court of Appeals as we shall hold that the damages cap in § 11–108 of the Courts and Judicial Proceedings Article does not apply to wrongful death actions.[3] In doing so, we overrule the Court of Special Appeals' holding to the contrary in *Potomac Electric v. Smith, supra,* 79 Md.App. at 619–623, 558 A.2d at 783–785.

By Chapter 639 of the Acts of 1986, the relevant portions of which are codified as §§ 11–108 and 11–109 of the Courts and Judicial Proceedings Article, the General Assembly enacted a statutory cap on damages and a procedure for itemization of awards in certain personal injury actions.[4] The text of this enactment reads as follows:

"**§ 11–108. Personal injury action—Limitation on non-economic damages.**

"(a) *Noneconomic damages.*—In this section:

"(1) 'Noneconomic damages' means pain, suffering, inconvenience, physical impairment, disfigurement, loss of consortium, or other nonpecuniary injury; and

"(2) 'Noneconomic damages' does not include punitive damages.

"(b) *Limitation of $350,000 established.*—In any action for damages for personal injury in which the cause of

---

**3.** When this Court resolves a question which renders the question certified non-determinative, this Court will not answer the unnecessary question. *See United States v. Searle,* 322 Md. 1, 6, 584 A.2d 1263, 1265–1266 (1991).

**4.** The title of Ch. 639 of the Acts of 1986 states:
"FOR the purpose of imposing a certain limit on noneconomic damages in certain actions for personal injury; allowing the periodic payment of certain future economic damages in an award for personal injury; requiring the trier of fact to itemize the award in a certain manner; providing for the admissibility of certain evidence after a certain time; requiring certain insurers to submit certain information to the Insurance Commissioner; requiring the Insurance Commissioner to make certain reports by a specific time; providing for the termination of certain requirements at a specific time; and generally relating to personal injury claims, adjudication procedures, and award of damages."

action arises on or after July 1, 1986, an award for noneconomic damages may not exceed $350,000.

"(c) *Award under § 3–2A–06 included.*—An award by the health claims arbitration panel in accordance with § 3–2A–06 of this article shall be considered an award for purposes of this section.

"(d) *Jury trials.*—(1) In a jury trial, the jury may not be informed of the limitation established under subsection (b) of this section.

"(2) If the jury awards an amount for noneconomic damages that exceeds the limitation established under subsection (b) of this section, the court shall reduce the amount to conform to the limitation.

"**§ 11–109. Same—Award for damages.**

"(a) *Economic damages.*—(1) In this section 'economic damages' means loss of earnings and medical expenses.

"(2) 'Economic damages' does not include punitive damages.

"(b) *Itemized award.*—As part of the verdict in any action for damages for personal injury in which the cause of action arises on or after July 1, 1986, the trier of fact shall itemize the award to reflect the monetary amount intended for:

(1) Past medical expenses;

(2) Future medical expenses;

(3) Past loss of earnings;

(4) Future loss of earnings;

(5) Noneconomic damages; and

(6) Other damages.

"(c) *Form of award for future economic damages; appointment of conservator.*—(1) The court or the health claims arbitration panel may order that all or part of the future economic damages portion of the award be paid in the form of annuities or other appropriate financial instruments, or that it be paid in periodic or other payments consistent with the needs of the plaintiff, funded in full by the defendant or the defendant's insurer and equal

when paid to the amount of the future economic damages award.

"(2) In the event that the court or panel shall order that the award for future economic damages be paid in a form other than a lump sum, the court or panel shall order that the defendant or the defendant's insurer provide adequate security for the payment of all future economic damages.

"(3) The court or panel may appoint a conservator under this subsection for the plaintiff, upon such terms as the court or panel may impose, who shall have full and final authority to resolve any dispute between the plaintiff and the defendant or the defendant's insurer regarding the need or cost of expenses for the plaintiff's medical, surgical, custodial, or other care or treatment.

"(d) *Death of plaintiff before final payment of award.*—If the plaintiff under this section dies before the final periodic payment of an award is made, the unpaid balance of the award for future loss of earnings shall revert to the estate of the plaintiff and the unpaid balance of the award for future medical expenses shall revert to the defendant or to the defendant's insurer if the insurer provided the funds for the future damages award."

In light of the language of the statute and its context, the extensive legislative history, and the practical and unresolved difficulties of applying the cap statute to reduce an award of damages in a wrongful death action, we conclude that the cap statute was not intended to apply to reduce an award for damages in a wrongful death action.

■ The language of the cap statute refers only to damages awarded in an action for "personal injury," § 11–108(b). The term "personal injury" or "injury" normally connotes a physical injury to a victim. The death of a victim as a result of a "personal injury" or "injury" is, of course, the ultimate injury to that victim. The damages recoverable by the victim's estate in a survival action, for a "personal injury" resulting in death, are, however, distinct

from the damages recoverable by the family of that victim under the Wrongful Death Act, § 3–901 *et seq.* of the Courts and Judicial Proceedings Article.[5] The damages which the victim's family are entitled to recover under the Wrongful Death Act are for the value, pecuniary or otherwise, of the life of the deceased to the persons entitled to recover.[6] This recovery for "death" under the wrongful death act does not compensate for the "personal injury" to the direct victim of the tortious conduct. Thus, ordinarily, unless the context indicates otherwise, damages for an "injury" or a "personal injury" or a "bodily injury" do not include those damages recoverable in a wrongful death action.

In fact, in numerous instances where the General Assembly intended to encompass both damages for personal injury and damages for wrongful death, it used the language "personal injury, death," or "personal injury, or death" or "personal injury, including death."[7] *See, e.g.,* Code (1957,

---

**5.** The differences between a survival and a wrongful death action were clearly delineated in *Stewart v. United Elec. L. & P. Co.,* 104 Md. 332, 65 A. 49 (1906). Chief Judge McSherry writing for the Court stated: "The suits are by different persons, the damages go into different channels, and are recovered upon different grounds, and the cause of action though growing out of the same wrongful act or neglect, are entirely distinct.... Under [the Wrongful Death Act,] the damages recoverable are such as the equitable plaintiffs have sustained *by the death* of the party injured; [in a survival action,] the damages recoverable are only such as the deceased sustained in his lifetime...." 104 Md. at 339–340, 65 A. at 52.

**6.** By Ch. 352 of the Acts of 1969, the General Assembly amended the Wrongful Death Act to allow for the recovery of nonpecuniary damages. The Act now provides that the damages recoverable in the event of the death of a spouse or a minor child include: "pecuniary loss ... mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable." § 3–904(d).

**7.** In *Pacific Indem. v. Interstate Fire & Cas.,* 302 Md. 383, 398, 488 A.2d 486, 493–494 (1985), this Court examined the reason for using a construction such as "injury, including death" stating:

1991 Repl.Vol., 1992 Cum.Supp.), Art 48A, § 243H (claims which may be made against MAIF include claims for "the death of or personal injury to a qualified person"); Code (1957, 1991 Repl.Vol.), Art. 48A, § 617 (product liability defined as liability for damages for "any personal injury, death ..."); Code (1957, 1991 Repl.Vol.), Art. 78, § 47 (owners and operators of taxicabs must be insured "against liability to passengers or members of the general public for property damage or personal injury (including death)"); Code (1982, 1987 Repl.Vol., 1992 Cum.Supp.), § 4–419 of the Environment Article (section does not limit "any cause of action for personal injury or wrongful death").[8] In the cap

---

" '[I]ncluding' also appears in the definition—'damages means all damages, including damages for death....' One would think that death is the most extreme form of injury imaginable, yet policy language reflected in reported decisions has spoken of 'bodily injury or death,' *see Perkins v. Fireman's Fund Indem. Co.,* 44 Cal.App.2d 427, 112 P.2d 670 (1941); *In re Employers' Liab. Assur. Corp.,* 180 La. 406, 156 So. 447 (1934); *Gaines v. Standard Acc. Ins. Co.,* 32 So.2d 633 (La.Ct.App.1947); *Lumbermen's Mut. Cas. Co. v. McCarthy,* 90 N.H. 320, 8 A.2d 750 (1939); *Brustein v. New Amsterdam Cas. Co.,* 255 N.Y. 137, 174 N.E. 304 (1931), as if the reference to death were needed because of the limited meaning of 'injury.' Other policies reflected in reports of decisions speak of *bodily* injury, 'including death.' *See Valdez v. Interinsurance Exchange,* 246 Cal.App.2d 1, 54 Cal.Rptr. 906 (1966); *Holtz v. Mutual Service Cas. Co.,* 264 Minn. 121, 117 N.W.2d 767 (1962); *Napier v. Banks,* 9 Ohio App.2d 265 [38 O.O.2d 320], 224 N.E.2d 158 (1967); *Bernat v. Socke,* 180 Pa.Super. 512, 118 A.2d 253 (1955). This use of 'including' may represent the same effort at enlargement as the use of 'or' does in 'bodily injury or death.' "

8. *See also, e.g.,* Code (1957, 1990 Repl.Vol.), Art. 38A, § 38 (agreement for rescue services with federal government must include a waiver of all claims for compensation for "any personal injury or death"); Code (1957, 1990 Repl.Vol., 1992 Cum.Supp.), Art. 41, §§ 4–511A and 4–504(d) ("victim" means a person who suffers "personal physical injury or death"); Code (1974, 1989 Repl.Vol., 1992 Cum.Supp.), § 5–399.4 of the Courts and Judicial Proceedings Article (owners or lessees of vehicle engaged in government service may not assert sovereign immunity in a claim for "personal injury, property damage, or death"); § 10–910 of the Courts and Judicial Proceedings Article (negligence of parent or custodian not imputed to infant in "any action on behalf of an infant to recover for death, personal injury, ..."); Code (1977, 1992 Repl.Vol.), § 16–402.1 of the Transportation Article (MVA may assess points for the failure to stop and render aid

statute, the General Assembly referred to "any action for damages for personal injury." It did not use the language, which is clearly familiar to it, of "personal injury or death" or "personal injury including death" to declare that the cap statute applied to damages awarded in a wrongful death action.

■ Courts ordinarily construe the terms "personal injury" or "bodily injury" or "injury" as not including a wrongful death action. *See, e.g., Daley v. United Services*, 312 Md. 550, 554, 541 A.2d 632, 634 (1988) (solatium damages claimed in a wrongful death action are not "bodily injury damages"); *Prouty v. Chicago*, 250 Ill. 222, 227, 95 N.E. 147, 149–150 (1911) (wrongful death act "does not, in its language or in substance, create a cause of action for a personal injury;" thus a statute requiring notice to the state of a personal injury claim does not require notice of a claim for damages suffered by third persons by reason of death.); *Stormo v. Dell Rapids*, 75 S.D. 582, 588, 70 N.W.2d 831, 834 (1955) (same); *Bilbo v. Lewis*, 45 S.W.2d 653, 656 (Tex.App.1932) (the provision in the statute and the policy for payment of "judgments based on damages from personal injury" is not broad enough to require payment of judgments which are based on damages resulting from death); *Morse's Estate v. Town of St. Johnsbury*, 92 Vt. 423, 433–434, 105 A. 34, 38 (1918) (statutory requirement of notice to municipality of a personal injury action did not apply to a suit by the "next of kin of the decedent"); *Kraus v. Board of County Road Comm'rs for County of Kent*, 236 F.Supp. 677, 679 (W.D.Mich.1964), *appeal denied*, 364 F.2d 919 (6th Cir.1966) (same). *See also Pacific Indem. v. Interstate Fire & Cas.*, 302 Md. 383, 395, 488 A.2d 486, 492

in the event of an "accident resulting in the death or personal injury of another"); § 21–1306 of the Transportation Article (no reference to protective headgear may be made during the trial of an action that "involves property damage, personal injury, or death"); §§ 22–412.3 and 22–412.4 of the Transportation Article (no reference to failure to use seat belt may be made in any civil action involving "property damage, personal injury or death").

(1985) (word "injury" in insurance policy referred to a physical injury); *Collins v. City of New York*, 55 N.Y.2d 646, 647, 446 N.Y.S.2d 258, 259, 430 N.E.2d 1311, 1312 (1981) (statute of limitations for personal injury inapplicable in a wrongful death action); *Priebe v. City of Canandaigua*, 91 Misc.2d 1047, 399 N.Y.S.2d 179 (1977) (same).

■ This Court, however, has interpreted the words "bodily injury" to encompass an action for wrongful death when the remainder of the statute indicated that the General Assembly intended such an interpretation. For example, in *Forbes v. Harleysville Mutual*, 322 Md. 689, 696–701, 589 A.2d 944, 947–949 (1991), this Court held that the uninsured motorist coverage required by Code (1957, 1991 Repl.Vol.), Art. 48A, § 541(c), encompassed wrongful death actions. We rejected an argument advanced by the insurer that, because one sentence in § 541(c) referred only to coverage for "bodily injuries sustained in the accident," wrongful death actions were not covered. We pointed out that this sentence could not be read in isolation as the statute spoke in several instances of liability policies applicable to "the bodily injury or death of the insured." 322 Md. at 699, 589 A.2d at 948–949. The context of the term "injury" in § 541(c) indicated "the General Assembly's contemplation that uninsured motorist coverage, to the same extent as liability coverage, is 'applicable to the ... death of the insured' and, like liability coverage, embraces wrongful death claims." *Ibid.*

Similarly, in Code (1991), § 9–101 of the Labor and Employment Article, the Worker's Compensation Act defines an accidental personal injury in part as "an accidental injury that arises out of and in the course of employment." No express reference is made in this definitional section to whether an accidental personal injury includes wrongful death. The Worker's Compensation Act, however, from the time of its enactment in 1914, has included a section outlining a system of compensation for the family of a decedent, in the event of a death which arises out of and occurs in the course of employment. Consequently, compensation for an

"injury" under the Worker's Compensation Act includes compensation for a decedent's family in the event of an accidental death.

The remainder of the cap statute, when read as a whole, indicates that the General Assembly did not intend "personal injury" to include those damages recoverable in a wrongful death action. The noneconomic damages that are subject to the cap are defined as "pain, suffering, inconvenience, physical impairment, disfigurement, loss of consortium, or other nonpecuniary injury." § 11–108(a)(1). These types of damages are associated with personal injury and are awarded to compensate the person injured. They are not designed to compensate the party entitled to damages in a wrongful death case for the loss of the deceased. In fact, some of these categories of damages, including those for inconvenience, physical impairment, disfigurement and loss of consortium, are not recoverable in a wrongful death action.[9] *See Bartucco v. Wright,* 746 F.Supp. 604, 607–608 (D.Md.1990).

The strongest indication that the General Assembly did not intend that a wrongful death action be subject to the cap statute is § 11–109 of the cap statute. Section 11–109(b) of the Courts and Judicial Proceedings Article requires a jury to itemize an award for damages for personal injury to reflect the monetary amount intended for past medical expenses, future medical expenses, past lost earnings, future loss of earnings, noneconomic damages and other damages. Each of these categories for itemization involve damages which are awarded to the injured person or his estate. They are not damages recoverable in a wrong-

---

**9.** The damages referenced in the cap statute would be recoverable in a survival action because a survival action allows for compensation for the pain and suffering endured by the deceased, as well as for loss of earnings and medical expenses, between the time of injury and the time of death. Damages recoverable under the Wrongful Death Act are measured by the value, pecuniary and otherwise, of the life of the deceased to the person entitled to damages. The cap statute does not reference this latter type of damage, either expressly or by implication.

ful death action, and there is nothing in § 11–109(b) which indicates that a jury should separate an award to the decedent's beneficiaries into pecuniary and nonpecuniary loss.

In fact, the remainder of § 11–109 sets forth a procedure by which an injured plaintiff would receive payments for future medical expenses and future loss of earnings over time. A court or health claims arbitration panel may order that the future medical expenses and loss of earnings be paid to the plaintiff in periodic payments or in payments consistent with the plaintiff's needs. This section clearly contemplates compensating a plaintiff who suffered physical injury. This conclusion is underscored by § 11–109(d) entitled "Death of plaintiff before final payment of award." When a plaintiff, who as a result of a personal injury is compensated for future medical expenses and loss of earnings over time, dies, the unpaid portion of the future loss of earnings reverts to the estate while the unpaid balance of the award for future medical expenses reverts to the defendant or the defendant's insurer. These provisions are entirely inconsistent with a award of damages in an action for wrongful death. Section 11–109 describes the itemization of an award for personal injury. There is nothing in this section which could be construed as providing for the itemization of a wrongful death award.

Therefore, both the language employed and the context in which it appears lead to the conclusion that the cap does not apply to awards in wrongful death actions. In addition to the language and the context, when construing a statute this Court will consider, as evidence of legislative intent, "other 'external manifestations' or 'persuasive evidence,' including a bill's title and function paragraphs, amendments that occurred as it passed through the legislature, its relationship to earlier and subsequent legislation, and other material that fairly bears on the fundamental issue of legislative purpose or goal...." *Kaczorowski v. City of Baltimore*, 309 Md. 505, 515, 525 A.2d 628, 632 (1987).

The Department of Legislative Reference's file on the bill which became the cap statute, Senate Bill 558 of the 1986 session, is extensive. It includes committee reports from both the House Judiciary and Senate Judicial Proceedings Committees, as well as individual statements by certain members of the General Assembly. Neither the committee reports nor any individual statements contain any mention of the cap statute encompassing a wrongful death action. Moreover, in addition to these internal reports, the General Assembly received two Maryland-based task force reports, *Report of the Governor's Task Force to Study Liability Insurance* (Dec.1985) and *Report of the Joint Executive/Legislative Task Force on Medical Malpractice Insurance* (Dec.1985), as well as several studies from out of state. Despite their exhaustive and meticulous approach, neither state task force mentions the applicability of the cap statute to a wrongful death action. In fact, in the voluminous legislative history of this statute, only one document even referred to wrongful death cases generally.[10] If the General Assembly had intended that the cap statute apply in wrongful death actions, it would seem that some indication of that intention would be present in either the language of the statute or in the considerable legislative history.

Nonetheless, the United States argues that the legislative history demonstrates that the General Assembly intended the cap to be applied broadly, relying on statements in the Court of Special Appeals' opinion in *Potomac Electric v. Smith, supra,* 79 Md.App. at 622, 558 A.2d at 784, that the legislation as originally introduced applied only to medical malpractice claims, that the scope of the cap then was

---

10. The only reference to wrongful death in the extensive legislative file on this enactment is found in a chart in a federal government report generated by a "work group" convened by the Attorney General of the United States. *See Report of the Tort Policy Working Group on the Causes, Extent and Policy Implications of the Current Crisis in Insurance Availability and Affordability,* ch. 2, p. 17 n. 28, and chart L (February, 1986) The chart documented an increase in the amount of awards in wrongful death actions throughout the country.

broadened to encompass "all tort claims," and that finally it was "broadened" once again to encompass "any action for personal injury." [11] The Court of Special Appeals' description of the order of the changes to this legislation is somewhat inaccurate.

The relevant changes made to this language as it journeyed through the General Assembly are as follows. In January 1986, Senate Bill No. 558, entitled "Tort Claims—Procedures—Award of Damages" was introduced for "the purpose of imposing a certain limit on noneconomic losses in any action for personal injury ... requiring the periodic payments of certain future damages for personal injury; requiring the trier of fact to itemize the award in a certain manner ... and generally relating to tort claims, adjudication procedures, and award of damages." Noneconomic damages were defined as "pain, suffering, inconvenience, physical impairment, disfigurement, or other nonpecuniary injury." The cap portion read: "(B) A money judgment entered in any action for damages for personal injury may not exceed $250,000 for noneconomic losses."

The bill was referred to the Senate Committee on Judicial Proceedings. The Senate then adopted the following relevant changes which are italicized. These changes narrowed the type of actions which would be subject to the cap to medical malpractice actions. The bill now was entitled *"Medical Malpractice*—Procedures—Award of Damages" and was "for the purpose of imposing a certain limit on noneconomic *damages* in *certain actions* ... allowing the periodic payment of certain future damages in *certain awards* for damages ... requiring the trier of fact to itemize the award in a certain manner ... and generally relating to *medical malpractice* claims, adjudication procedures, and award of damages." Loss of consortium was added to the definition of noneconomic damages, and the

---

11. The notion that a change from "all tort claims" to "any action for personal injury" represents a "broadening" is, in our view, quite peculiar.

cap portion of the statute read: "A money judgment entered in any action for damages for *an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in § 3–2A–01 of this Article,* may not exceed $350,000 for noneconomic losses."

The House refused to agree with the changes made by the Senate and essentially restored the bill to its original form. A floor amendment however, changed the title of the bill from "Tort Claims—Procedures—Award of Damages" to *"Personal Injury*—Procedures—Award of Damages" which was "for the purpose of imposing a certain limit on noneconomic damages in certain actions for *personal injury* ... and generally relating to *personal injury* [rather than tort] claims, adjudication procedures, and award of damages." The Senate refused to concur in the House amendments and the bill was referred to a conference committee.

The conference committee recommended a version of the bill which retained most of the changes made in the House. The General Assembly adopted this version which was entitled "Personal Injury—Procedures—Award of Damages" which was "for the purpose of imposing a certain limit on noneconomic damages in certain actions for personal injury ... allowing the periodic payment of future economic damages in an award for personal injury; requiring the trier of fact to itemize the award in a certain manner ... and generally relating to personal injury claims, adjudication procedures and award of damages." The definition of noneconomic damages included "loss of consortium" and the cap clause read: "(B) In any action for damages for personal injury in which the cause of action arises on or after July 1, 1986, an award of noneconomic damages may not exceed $350,000."

In the final version of the bill, the scope of the cap's application was narrower than in the version originally introduced, although broader than in the version as amended by the Senate. The actions subject to the cap were

narrowed from tort claims to personal injury claims, but these personal injury claims included injuries other than those caused by medical malpractice.

The United States also argues that, unless we construe the cap statute to include wrongful death actions, the legislative purpose in enacting the statute will be frustrated. We do not agree.

Sections 11–108 and 11–109 were enacted "in response to a legislatively perceived crises concerning the availability and cost of liability insurance in this State.... The General Assembly's objective in enacting the cap was to assure the availability of sufficient liability insurance, at a reasonable cost, in order to cover claims for personal injuries to members of the public." *Murphy v. Edmonds*, 325 Md. 342, 368–369, 601 A.2d 102, 114–115 (1992).

In this effort to limit the rising cost of and to ensure the availability of liability insurance, the General Assembly considered numerous options. For example, both state task force reports suggested a $250,000 cap on noneconomic damages. The General Assembly also considered existing and proposed tort reform proposals from other states. *See* National League of Cities, *Tort Reform and Liability Insurance Legislation in 1986* (June 1986). Thus, the General Assembly had a wide assortment of proposals designed to effectuate its goal.

The General Assembly did not enact every proposal that would to the greatest extent reduce insurance costs and secure the availability of insurance. Rather, the Legislature was selective in choosing measures which would further this goal. The General Assembly enacted a cap on noneconomic damages only; it did not cap economic or punitive damages. The cap enacted on noneconomic damages was $350,000 rather than the proposed $250,000. The General Assembly rejected many other proposals which, it may be argued, were consistent with the legislative purpose of the cap statute. Similarly, the General Assembly re-

stricted the application of the cap to the noneconomic damages incurred by the direct victim of tortious conduct.

It has been repeatedly recognized that legislative bodies need not and do not "attack all aspects of a problem at the same time. The legislative body may select one phase of a problem and apply a remedy there, neglecting for the moment other phases of the problem." *Bowie Inn v. City of Bowie*, 274 Md. 230, 241, 335 A.2d 679, 686 (1975). *See, e.g., Williamson v. Lee Optical*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, 573 (1955); *Hargrove v. Board of Trustees*, 310 Md. 406, 421–425, 529 A.2d 1372, 1379–1381 (1987), *cert. denied*, 484 U.S. 1027, 108 S.Ct. 753, 98 L.Ed.2d 766 (1988); *Department of Transportation v. Armacost*, 299 Md. 392, 408–410, 474 A.2d 191, 199–202 (1984); *Montgomery County v. Fields Road*, 282 Md. 575, 579–581, 386 A.2d 344, 346–347 (1978).

Although the inclusion of wrongful death actions might well be consistent with the principal purpose of the cap statute, there are many other ways in which the statute could be broadened that would also be consistent with its principal purpose. Amending the statute, however, is not the function of the judiciary. Inclusion of wrongful death actions is not consistent with the language, context and legislative history of the cap statute. Assuming arguendo that this Court agreed with the United States' contention that the objective of the cap would be furthered by subjecting noneconomic awards in wrongful death cases to the cap, we are not free to rewrite a statute merely because the Court believes that the legislature's purpose would have been more effectively advanced by an additional provision. *Kaczorowski v. City of Baltimore, supra*, 309 Md. at 516 n. 4, 525 A.2d at 633 n. 4; *Davis v. State*, 294 Md. 370, 378, 451 A.2d 107, 111 (1982); *Giant of Md. v. State's Attorney*, 267 Md. 501, 511, 298 A.2d 427, 433, *app. dismissed*, 412 U.S. 915, 93 S.Ct. 2733, 37 L.Ed.2d 141 (1973); *Birmingham v. Board of Public Works*, 249 Md. 443, 449–450, 239 A.2d 923, 926–927 (1968) (ascertainable legislative intent will prevail over a contrary literal construction, but this princi-

ple does not permit a court to insert in a statute a provision which the legislature omitted).[12]

If this Court were to accept the construction offered by the United States without regard to the language of the statute, the context in which it appears, and the legislative history, we would be required to hold that the Wrongful Death Act had been substantially amended by the cap statute. Moreover, we would have to construct that amendment and develop a procedure for the itemization of a wrongful death award so that the cap could be applied in a

---

**12.** Judge Chasanow's concurring opinion invokes the principle that "[w]here the legislature has acquiesced in the judicial construction of a statute, there is a strong presumption that the intention of the legislature has been correctly interpreted. Such legislative acquiescence should not be judicially altered." Concurring opinion at 555, 620 A.2d at 916. The reported opinions cited by Judge Chasanow constituting a "judicial construction" of the cap statute are the Court of Special Appeals' opinion in *Potomac Electric v. Smith,* 79 Md.App. 591, 558 A.2d 768, *cert. denied,* 317 Md. 393, 564 A.2d 407 (1989), and two federal district court opinions. The statutory construction principle relied on by Judge Chasanow, however, has little or no applicability when the judicial construction of the statute is not by the highest court of the jurisdiction involved. Thus, with regard to the construction of a Maryland statute, the General Assembly might well wait for an authoritative interpretation by this Court before reacting to an interpretation by the Court of Special Appeals or by the United States District Court. Consequently, when we have applied the statutory construction principle to a Maryland statute, we have referred to "this Court's" prior interpretation of the statute. *See, e.g., Forbes v. State,* 324 Md. 335, 342, 597 A.2d 427, 431 (1991) (" 'The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation,' " quoting *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301, 1305 (1981)); *Nationwide v. USF & G,* 314 Md. 131, 143, 550 A.2d 69, 75 (1988) (referring to "our decision" previously interpreting the statute and to " 'this Court's' " prior interpretation); *Frank v. Storer,* 308 Md. 194, 203, 517 A.2d 1098, 1102–1103 (1986) (referring to the General Assembly's acquiescence in the statutory meaning "as determined by this Court's interpretation").

Judge Chasanow also seems to place some weight upon this Court's denial of certiorari in *Potomac Electric v. Smith, supra.* It is a settled principle of appellate practice, however, that a denial of certiorari in no way signifies approval of the decision below. *See, e.g., Owen v. Freeman,* 279 Md. 241, 247 n. 5, 367 A.2d 1245, 1249 n. 5 (1977) ("the denial of a petition for certiorari has no significance with regard to the merits of a case").

wrongful death case. This we decline to do. *See Weimer v. Hetrick,* 309 Md. 536, 554, 525 A.2d 643, 652 (1987); *McKeon v. State, Use of Conrad,* 211 Md. 437, 443–444, 127 A.2d 635, 638 (1956); *Dunnigan v. Cobourn,* 171 Md. 23, 25, 187 A. 881, 882 (1936).

This Court has previously refused to expand the type of damages available in a wrongful death action unless expressly authorized by the General Assembly. For example in *Smith v. Gray Concrete Pipe Co.,* 267 Md. 149, 158–159, 297 A.2d 721, 726–727 (1972), *overruled on other grounds by Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992), we restated the rule that punitive damages are not recoverable in a wrongful death action. *See Baltimore & Ohio R.R. Co. v. Kelly,* 24 Md. 271, 280 (1866). The rationale for this holding was that the statute creating the cause of action for wrongful death expressly sets forth the types of damages recoverable in such an action. *See also, Cohen v. Rubin,* 55 Md.App. 83, 101–102, 460 A.2d 1046, 1055–1056 (1983). Similarly, prior to the legislative expansion of the type of damages recoverable in a wrongful death action in 1969, this Court strictly adhered to the "pecuniary loss rule." *See Hutzell v. Boyer,* 252 Md. 227, 237–239, 249 A.2d 449, 455–456 (1969); *Baltimore & Ohio Railroad Co. v. State ex rel. Mahone,* 63 Md. 135, 146 (1885); *State ex rel Coughlan v. Baltimore & Ohio Railroad,* 24 Md. 84, 105–106 (1866).

Just as we refused to expand the type of damages recoverable in a wrongful death action unless expressly authorized by the General Assembly, we will not restrict the type of damages recoverable in a wrongful death action by application of the cap statute unless expressly authorized by the General Assembly. Consequently, we hold that the noneconomic damages cap found in § 11–108 of the Courts and Judicial Proceedings Article is inapplicable to a wrongful death action.

QUESTION ANSWERED AS HEREIN SET FORTH. COSTS IN THIS COURT TO BE EQUALLY DIVIDED.

CHASANOW, Judge, concurring.

In *Murphy v. Edmonds*, 325 Md. 342, 601 A.2d 102 (1992), the Court held that Maryland Code (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article, § 11–108 (the cap statute) "[did] not implicate such an important 'right' as to trigger any enhanced scrutiny." *Id.* at 362, 601 A.2d at 111. Instead, the Court subjected the statute only to rational basis review. I dissented in *Murphy* because I believed that "the right to recover full and fair compensation from a tortfeasor is an important personal right, and any limitation on that right should be subject to 'heightened' or 'intermediate' scrutiny." *Id.* at 379, 601 A.2d at 120 (Chasanow, J., dissenting). I believed then, and still do, that

> "legislation limiting recovery of noneconomic damages might survive such heightened scrutiny [required by Article 24 of the Maryland Declaration of Rights] if applied in medical malpractice cases, but it should not survive heightened scrutiny in motor vehicle tort actions or other tort actions where there has been no clearly established need for such legislation."

*Id.*

If, as the majority holds in the instant case, the legislature intended the cap statute to limit the noneconomic damage recovery of actual tort victims, but to give unlimited recovery for noneconomic damages to the families of deceased tort victims, this further indicates that the cap statute should not survive heightened scrutiny under Article 24 of the Maryland Declaration of Rights. It should not even pass the rational basis test.

The effect of the majority's opinion in the instant case is that, if six year-old Marc Streidel had survived his injury, but had brain damage and been rendered a quadriplegic, he could only recover a maximum of $350,000 for the pain, anguish, and suffering of having to endure perhaps sixty-plus years in that state. Since Marc died, however, there is no noneconomic damage limitation, and Marc's parents can

recover $1,000,000 ($500,000 each) for their suffering and anguish. If the legislature intended to resolve the liability insurance crisis by such an inequitable limitation on noneconomic damages, it further reinforces my view that the cap statute, except in the medical malpractice area, denies seriously injured tort victims equal protection of law.

The cap statute is aimed at reducing high noneconomic damage awards that will have to be paid by medical malpractice and automobile liability insurance carriers. Putting aside my views on the cap statute's constitutional deficiencies, it seems to me that the legislature must have intended the phrase "[i]n any action for damages for personal injury," as used in the cap statute, to include wrongful death actions. The noneconomic damages of the primary tort victim, the person physically injured by the tortfeasor, are at least as deserving of full compensation as the noneconomic damages of the secondary victim, the wrongful death plaintiff. In *Forbes v. Harleysville Mutual*, 322 Md. 689, 589 A.2d 944 (1991), this Court construed Maryland Code (1957, 1991 Repl.Vol.), Article 48A, § 541(c)(2) which statutorily mandates uninsured motorist coverage. We held that the legislature intended that the phrase "damages which the insured is entitled to recover ... because of bodily injuries," should be construed to include wrongful death claims by survivors. *Id.* at 695–701, 589 A.2d at 947– 49. The legislative intent to include wrongful death claims in the phrase "personal injury" in the instant case seems even stronger than the legislative intent to include wrongful death claims in the phrase "bodily injuries" as construed in *Forbes*.

We may glean some indication of legislative intent from the legislature's acquiescence in decisions construing the cap statute. In 1989, the Court of Special Appeals held that "personal injury," as used in the cap statute, should include wrongful death actions. *Potomac Electric v. Smith*, 79 Md.App. 591, 619–23, 558 A.2d 768, 783–85 (1989). This Court denied certiorari in *Potomac Electric* the same year. *Potomac Electric v. Smith*, 317 Md. 393, 564 A.2d 407

(1989). Within a year, two separate reported decisions of the United States District Court for the District of Maryland held that the cap statute included wrongful death claims. *Bartucco v. Wright*, 746 F.Supp. 604 (D.Md.1990) (Garbis, J.); *Simms v. Holiday Inns, Inc.*, 746 F.Supp. 596 (D.Md.1990) (Smalkin, J.). That same year the Fourth Circuit held that the $350,000 Maryland statutory cap on noneconomic damages applied to wrongful death actions. *Searle v. United States*, 900 F.2d 255 (4th Cir.1990) (unpublished opinion); *see also United States v. Searle*, 322 Md. 1, 584 A.2d 1263 (1991) (where other aspects of the *Searle* decision were certified to this Court). Thus, by 1990, every decision construing the cap statute held that the cap was applicable to wrongful death claims. These decisions must have reduced the recoveries of many subsequent wrongful death plaintiffs. The legislature obviously realized that courts throughout the State were applying the cap to noneconomic damages in wrongful death actions and, for several years, the legislature has acquiesced in that construction. Where the legislature has acquiesced in the judicial construction of a statute, there is a strong presumption that the intention of the legislature has been correctly interpreted. Such legislative acquiescence should not be judicially altered. *See Stewart v. State*, 275 Md. 258, 270, 340 A.2d 290, 297 (1975); *Shriner v. Mullhausen*, 210 Md. 104, 115, 122 A.2d 570, 575 (1956); *Nutwell v. Sup. of Elections*, 205 Md. 338, 343, 108 A.2d 149, 151 (1954).

I doubt that the legislature intended that the entire burden of reducing insurance costs should fall solely on primary tort victims, rather than be shared with secondary victims such as wrongful death plaintiffs. The majority's holding that the cap statute limits recovery for the pain, anguish, and suffering of primary tort victims, but permits unlimited recovery for the pain and anguish of secondary tort victims, only reinforces my view that, except in medical malpractice cases, the cap statute denies severely injured tort victims equal protection of law.